IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| LUCA INTERNATIONAL GROUP LLC[1] | § | CASE NO. 15-34221-H2-11 |
| | § | |
| | § | Joint Administration Pending |
| Debtors. | § | Judge David R. Jones |
| | § | |

**EMERGENCY MOTION TO INCUR POST PETITION
INDEBTEDNESS UNDER 11 U.S.C. §364(b), §503(b) AND §105**

*************************************************************************

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**EMERGENCY CONSIDERATION OF THIS MOTION HAS BEEN GRANTED. BECAUSE THE COURT WILL CONSIDER THE MOTION ON AN EMERGENCY BASIS, YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

*************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

LUCA International Group LLC ("LIG"), LUCA Operation, LLC ("LO"), LUCA

---

[1] The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Luca International Group LLC (1086), Luca Operation LLC (0343), Luca International Group (Texas) LLC (5577), Luka Barnett Shale Joint Venture, LLC (5340), Luca Energy Fund LLC (0677), Luca Energy Resources LLC (tbd), Luca Resources Group LLC (1699), Luca I, LP (4104), Luca II, LP, (9778), Luca Oil LLC (8161), Luca To-Kalon Energy LLC (3922), Luca Oil II Joint Venture (6604).

International Group (Texas), LLC ("LIG TX"), LUCA Barnet Shale Joint Venture LLC ("LBS"), LUCA Energy Fund LLC ("LEF"), LUCA Energy Resources LLC ("LER"), LUCA I LP ("LI"), LUCA II LP ("LII"), LUCA Oil, LLC ("LOL"), LUCA Oil II Joint Venture ("LOII"), LUCA To-Kalon Energy LLC ("LTK"), LUCA Resources Group LLC ("LRG") (collectively "Debtors"), file this *Emergency Motion to Incur Post Petition Indebtedness Under 11 U.S.C. §364(c), §503(b) and §105* (the "Motion") and in support thereof, respectfully states as follows:

## Summary and Emergency Basis

1. Schumann/Steier Holdings, LLC or its designee (the "DIP Lender") has agreed to provide secured DIP financing, pursuant to 11 USC § 364(b), of up to $2,000,000 to cover the projected shortfalls in operating expenses and professional fees provided for in the budget attached as Exhibit "A". The debt shall be secured by first priority liens on all of the Debtors' assets and an allowed super priority claim.

2. Debtors have moved this Court on an emergency basis for approval of the DIP Financing in order to satisfy the ordinary and necessary expenses of operation. An emergency hearing is necessary since some of these expenses need to be paid before expiration of the fourteen (14) day notice period provided for in Bankruptcy Rule 4001—including expenses that would permit the Debtors to resume production from a well that is not operating due to a simple lack of sufficient funds to pay for ordinary course saltwater removal. The Debtors have insufficient cash to conduct their ordinary course operations. The emergency relief requested herein is carefully limited to permit Debtors to resume ordinary course operations and pay its vendors until the notice period has passed. Debtors also request the Court authorize the Debtors' obtain acquisition of credit on both on a preliminary basis to cover immediate expenses, and on a

final basis if no objection to this relief is received prior to the 15th day after the entry of the order approving the same.

## I. Jurisdiction and Venue

3. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § § 157, 1334.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

5. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. §§ 1409.

## I. FACTUAL BACKGROUND

**A.   Overview**

6. The above captioned bankruptcy cases were each filed on August 6, 2015 (collectively "Petition Date"), under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. (the "Bankruptcy Code").  The Debtors continue to manage their property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  A motion seeking joint administration of these cases was filed on August 6, 2015 (Docket #2) and remains pending before the Court.

7. No trustee or examiner has been appointed in the Debtors' bankruptcy cases and no official committee of unsecured creditors has been established.

8. A detailed factual background of the Debtors' business and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Affidavit of Loretta R. Cross* in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief filed contemporaneously herewith and incorporated herein by reference.  A brief summary of the factual background is listed below.

9. The Debtors are engaged in the exploration and production of natural gas, petroleum and related hydrocarbons. Bingqing Yang ("Yang") is the sole member/manager for Debtors. Debtors obtained funds from investors that were placed into various entities that were utilized in the operations of other entities.

10. Debtors have a draft reserve report that was prepared in March 2015 by Gustavson Associates. The reserve report indicates that Debtors have proved developed non-producing and proved behind pipe net reserves of approximately 3.2 billion cubic feet of gas and 450 million barrels of oil. The reserve report did not address proved undeveloped, probable or possible reserves.

11. On July 6, 2015, under Case No. 15-cv-03101, the Securities and Exchange Commission ("SEC") filed a lawsuit against several LUCA entities, including the Debtors, Yang and certain other individuals in the United States District Court of the Northern District of California, San Francisco Division ("SEC lawsuit"). The SEC lawsuit alleged securities fraud against the defendants for a scheme targeting the Chinese American community as well as investors in Asia to invest in various unregistered offerings. There are SEC allegations of funds being used for Yang's personal expenses. The SEC has sought the appointment of a receiver, and this matter remains pending.

12. In order to restore credibility to the operation, the Debtors, pursuant to various consents executed by Yang, retained Loretta R. Cross of Stout Risius Ross, Inc. as Chief Restructuring Officer (the "CRO") of the Debtors with full authority to operate the Debtors. Ms. Cross has served in that capacity since July 16, 2015.

**B.     Reason for Bankruptcy Filing**

13.     The cash flow is insufficient to cover operational expenses, including trade vendors.  Over $500,000 of liens have been placed against the Belle Grove #1 well.  Exploration and development costs were apparently excessive and drained the Debtors' cash.  Numerous lawsuits have been filed against the Debtors.  Those lawsuits include collection actions, lien assessments and the SEC litigation.  The Debtors need the protection of the automatic stay to allow time to execute a sales process that will allow it to address the payment of creditors with the remainder being available to provide a return of investor funds.  These are the primary reasons for these bankruptcy filings.

14.     The goal of these Chapter 11 cases is to sell assets, through a bidding process, with the proceeds utilized to fund a Chapter 11 plan which will provide a return to the creditors in these cases.

## IV. BASIS FOR REQUESTED RELIEF

**A.     DIP Financing and Legal Standard**

15.     DIP Lender is willing to provide DIP financing to the Debtors, during the pendency of this case.  Subject to court approval, pursuant to 11 U.S.C. § 364(c), DIP Lender has agreed to provide secured DIP financing to the Debtors in the amount up to $2,000,000 ("Revolving Credit Note").  The debt shall be allowed as a super priority claim pursuant to 11 U.S.C. § 364(c)(1).  Debtors request authority to use necessary funds to pay expenses on the budget attached hereto as Exhibit "A".

16.     The DIP Financing will be used to help fund Debtors' operations for the next few months while the Debtors seek buyers for the assets and formulate a Chapter 11 plan.

17.     If the DIP Financing is not approved, Debtors may not be unable to fully continue operations.

18. The material terms of the Revolving Credit Note are as follows:

| | |
|---|---|
| **Borrowers** | Luca Operation LLC and Luca International Group LLC |
| **Facility Amount; Conditions to Funding of Second Draw** | The DIP Facility shall comprise a commitment for up to $2,000,000. The DIP Facility may be funded through an Interim Draw and Subsequent Draws as set forth below. |
| **Use of Proceeds** | The proceeds of the DIP Facility shall generally be used (1) to finance working capital needs, specified capital expenditures and general corporate purposes of the Debtors, all in accordance with the applicable DIP Budget; (2) to pay the fees, costs and expenses incurred by the Debtors in connection with their chapter 11 cases; and (3) to pay interest to and the fees, costs, and expenses of the DIP Lender. |
| **Interest Rate** | LIBOR + 15%, with a LIBOR floor of 3%. Upon disbursement of the Interim Draw, interest shall at all times accrue on the greater of: (1) the Borrowers' outstanding balance under the DIP Facility; or (2) $1 million, until all amounts owed by the Borrowers under the DIP Facility have been paid in full. |
| **Commitment Fee** | 2.5% of the Facility Amount, payable upon funding of the Interim Draw. |
| **Collateral Monitoring Fee** | $11,000 per month; no additional financial advisory or collateral monitoring fees of the Lender will be billed to Luca. |
| **Due diligence expense reimbursement** | Initial advance of $30,000, reasonable expenses only |
| **Interim Draw** | $200,000, funded upon approval of the Interim DIP Motion to be filed as one of the first day motions by an Order acceptable to the DIP Lender in its sole discretion. |
| **Subsequent Draws and availability thereof** | The Subsequent Draws shall be available upon entry of an order by the Bankruptcy Court granting final approval of the DIP Facility that is in form and substance acceptable to the DIP Lender in its sole and absolute discretion and subject to receipt by the DIP Lender of a current reserve report for the borrowers' interest in the mineral interests (and omitting third party interests), as reported by the debtors, showing proved reserves in excess of $4 million of which at least $2.5 million are proved developed producing (PDP) reserves.<br>The Subsequent Draws shall be in increments of at least $250,000. The first Subsequent Draw will be for $800,000, payable on final approval of the DIP Facility. |
| **Interest Payments** | Monthly, in arrears, on the drawn amount. Any unpaid accrued interest will be payable upon maturity. |
| **Maturity** | Nine months from approval of the Interim DIP Motion |
| **Liens** | In order to secure the Postpetition Debt, effective immediately upon entry of the Interim Order, the DIP Lender shall be granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (the "DIP Liens"), on all assets of the Debtors. |
| **Priority of Liens** | To the extent permissible under the Bankruptcy Code, pursuant to Bankruptcy Code §364(d)(1), the Postpetition Liens shall be senior in priority and superior to any security, mortgage, |

| | |
|---|---|
| | collateral interest, lien or claim on or to any of the Collateral. |
| **Superpriority Claim** | Upon entry of the Interim Order, the DIP Lender shall be granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority claim against each of the Debtors in the Chapter 11 Cases and any successor cases for all Postpetition Debt. To the extent permissible under the Bankruptcy Code, the superpriority claim shall be subordinate only to the Postpetition Liens. To the extent permitted by the Bankruptcy Code, the superpriority claim (a) shall otherwise have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Chapter 11 Cases and any successor cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth in the Interim Order), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. |

19. A copy of the Term Sheet is attached as Exhibit "B". Debtors request that this credit facility be allowed under 11 U.S.C. § 364(c)(1), and that DIP Lender be granted a first priority lien on all of the Debtors' assets. The final loan agreement will contain negotiated limits or carve outs on professional fees.

20. The Debtors believe that they have business justification for entering into the DIP Financing in order to ensure that future operations are funded and the value of the oil and gas assets maintained for the benefit of the creditors and the investors.

21. Thus, the Debtors ask for this Court to authorize them to enter into the Revolving DIP Credit Note with LUCA Lender, in an amount up to $2,000,000.

22. Despite efforts to the contrary, the Debtors are unable to obtain alternative financing on reasonable terms with such short notice. Further, the proposed terms of the DIP Financing are favorable and it is unlikely that better terms could otherwise be negotiated.

23. Bankruptcy Rule 4001(c)(2) states that 14 days' notice must be given before final approval of such post-petition financing is given. With this Motion, the Debtors are providing said notice, with 14 days' notice between the time of the filing of this Motion and entry of an order granting final approval of post-petition financing. An emergency hearing has been requested on these matters. The Debtors require court approval, both on an interim and final basis, to enter into the DIP Financing.

24. The Debtors will suffer irreparable harm if the Motion is not immediately considered as it does not have the funds to pay immediate expenses. If the Debtors cannot fund operations, they will have to cease operating and there will be little chance, if any to pay creditors and investors. Moreover, the Debtors oil and gas leases—the Debtors primary assets-- may be lost if production is not continued or resumed in short order. Accordingly, emergency consideration of this motion is required.

25. The Debtors request that the Court authorize the Debtors to obtain post-petition financing to pay help necessary operating expenses ("Order"). Bankruptcy Rule 4001(c) (2) states that 14 days' notice must be given before final approval of such post-petition financing is given. Accordingly, the Debtors further request that said Order shall become a final order on the 15th day after it is entered; provided that, if an objection to the Order ("Objection") is filed prior to the 15th day after its entry, the Order shall become final only after a hearing on the Objection. In the event the Objection is sustained, the terms and conditions and the respective rights and obligations of the parties set forth herein shall nevertheless remain binding, valid and in full force and effect for the period prior to entry of a court order sustaining such objection prior to the 15th day after entry of such Order.

26. If any party files an Objection to the post-petition financing, then the Debtors' right to use borrowed funds shall terminate at midnight on the 14th day after entry of the Order unless (i) the Court orders otherwise, or (ii) DIP Lender consent to provide unsecured financing in the ordinary course of Debtors' business without obtaining the protections of the Order.

## V. Conclusion

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court:

1) Enter a preliminary order authorizing the post-petition financing pursuant to the attached budget (Exhibit "A") for 14 days;

2) Absent objection, approve entry of a final order authorizing the Debtors to incur post-petition indebtedness as an administrative claim pursuant to 11 U.S.C. § 507(b); and

3) Granting all such other and further relief as is just and proper.

DATED:   August 6, 2015

> Respectfully submitted,
>
> HOOVER SLOVACEK LLP
>
> By:   */s/ Edward L. Rothberg*
>         EDWARD L. ROTHBERG
>         State Bar No. 17313990
>         5051 Westheimer, Suite 1200
>         Houston, Texas 77056
>         Telephone: 713.977.8686
>         Facsimile:  713.977.5395
>         rothberg@hooverslovacek.com
>     PROPOSED ATTORNEYS FOR DEBTORS and
>     DEBTORS IN POSSESSION

**OF COUNSEL:**
Hoover Slovacek LLP
MELISSA A. HASELDEN
State Bar No. 00794778
ANNIE CATMULL
State Bar No. 00794932
T. JOSH JUDD
State Bar No. 24036866
DEIRDRE CAREY BROWN

State Bar No. 24049116
BRENDETTA A. SCOTT
State Bar No. 24012219
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395

## Verification

      The factual statements in paragraphs 6-16 are true and correct within my own personal knowledge.  In my opinion, a genuine emergency exists that requires consideration of this matter in order to avoid hardship to the bankruptcy estate, and so that the Debtors can maintain its operations and control of its assets.  I certify under penalty of perjury that the foregoing is true and correct.

                                                                         /s/ Edward L. Rothberg
                                                                 EDWARD L. ROTHBERG

# EXHIBIT A
Budget

WILL SUPPLEMENT

**EXHIBIT B**
Credit Term Sheet

## LUCA/SSI POSTPETITION CREDIT TERM SHEET

| **Borrowers** | Luca Operation LLC and Luca International Group LLC |
|---|---|
| **Facility Amount; Conditions to Funding of Second Draw** | The DIP Facility shall comprise a commitment for up to $2,000,000. The DIP Facility may be funded through an Interim Draw and Subsequent Draws as set forth below. |
| **Use of Proceeds** | The proceeds of the DIP Facility shall generally be used (1) to finance working capital needs, specified capital expenditures and general corporate purposes of the Debtors, all in accordance with the applicable DIP Budget; (2) to pay the fees, costs and expenses incurred by the Debtors in connection with their chapter 11 cases; and (3) to pay interest to and the fees, costs, and expenses of the DIP Lender. |
| **Interest Rate** | LIBOR + 15%, with a LIBOR floor of 3%. Upon disbursement of the Interim Draw, interest shall at all times accrue on the greater of: (1) the Borrowers' outstanding balance under the DIP Facility; or (2) $1 million, until all amounts owed by the Borrowers under the DIP Facility have been paid in full. |
| **Commitment Fee** | 2.5% of the Facility Amount, payable upon funding of the Interim Draw. |
| **Collateral Monitoring Fee** | $11,000 per month; no additional financial advisory or collateral monitoring fees of the Lender will be billed to Luca. |
| **Due diligence expense reimbursement** | Initial advance of $30,000, reasonable expenses only |
| **Interim Draw** | $200,000, funded upon approval of the Interim DIP Motion to be filed as one of the first day motions by an Order acceptable to the DIP Lender in its sole discretion. |
| **Subsequent Draws and availability thereof** | The Subsequent Draws shall be available upon entry of an order by the Bankruptcy Court granting final approval of the DIP Facility that is in form and substance acceptable to the DIP Lender in its sole and absolute discretion and subject to receipt by the DIP Lender of a current reserve report for the borrowers' interest in the mineral interests (and omitting third party interests), as reported by the debtors, showing proved reserves in excess of $4 million of which at least $2.5 million are proved developed producing (PDP) reserves.<br><br>The Subsequent Draws shall be in increments of at least $250,000. The first Subsequent Draw will be for $800,000, payable on final approval of the DIP Facility. |
| **Interest Payments** | Monthly, in arrears, on the drawn amount. Any unpaid accrued interest will be payable upon maturity. |

{851243-00011 TJJ 8/6/2015 00988604.DOCX 1}

| | |
|---|---|
| **Maturity** | Nine months from approval of the Interim DIP Motion |
| **Liens** | In order to secure the Postpetition Debt, effective immediately upon entry of the Interim Order, the DIP Lender shall be granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (the "DIP Liens"), on all assets of the Debtors. |
| **Priority of Liens** | To the extent permissible under the Bankruptcy Code, pursuant to Bankruptcy Code §364(d)(1), the Postpetition Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the Collateral. |
| **Superpriority Claim** | Upon entry of the Interim Order, the DIP Lender shall be granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority claim against each of the Debtors in the Chapter 11 Cases and any successor cases for all Postpetition Debt. To the extent permissible under the Bankruptcy Code, the superpriority claim shall be subordinate only to the Postpetition Liens. To the extent permitted by the Bankruptcy Code, the superpriority claim (a) shall otherwise have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Chapter 11 Cases and any successor cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth in the Interim Order), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. |
| **Events of Default** | One or more of the following events shall constitute an "Event of Default": <br><br> • (a) the Borrowers shall fail to pay any principal or interest of the Postpetition Debt or any fee or any other amount of the Postpetition Debt when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof, by acceleration or otherwise. <br><br> • (b) any representation or warranty made or deemed made by or on behalf of the Borrowers or in connection with any Postpetition Document or any amendment or modification of any Postpetition Document or waiver under such Postpetition Document, or in any report, certificate, financial statement or other document furnished pursuant to or in connection with any Postpetition Document or any amendment or |

modification thereof or waiver thereunder, shall prove to have been incorrect in any material respect when made or deemed made (unless such representation or warranty was already qualified by materiality, in which case such representation or warranty shall simply have been true and correct).

- (c) the Borrowers shall fail to observe or perform any covenant or condition the DIP Credit Agreement.

- (d) the Borrowers shall fail to observe or perform any covenant, condition or agreement contained in the Postpetition Credit Term Sheet or any other Postpetition Document, and such failure shall continue unremedied for a period of 30 days after the earlier to occur of (1) notice thereof from the DIP Lender to the Borrowers or (2) a responsible officer of the Borrowers otherwise becoming aware of such default.

- (e) except as a result of the commencement of the Bankruptcy Cases, and to the extent the relevant holders remain subject to the automatic stay imposed thereby, the Borrowers shall fail to make any payment (whether of principal or interest and regardless of amount) in respect of any material indebtedness, when and as the same shall become due and payable.

- (f) except as a result of the commencement of the Bankruptcy Cases, and to the extent the relevant holders remain subject to the automatic stay imposed thereby, any event or condition occurs that results in any material indebtedness becoming due prior to its scheduled maturity or that enables or permits (with or without the giving of notice, the lapse of time or both) the holder or holders of any material indebtedness or any trustee or agent on its or their behalf to cause any material indebtedness to become due, or to require the redemption thereof or any offer to redeem to be made in respect thereof, prior to its scheduled maturity or require the Borrowers to make an offer in respect thereof provided that this shall not apply to secured Debt that becomes due as a result of the voluntary sale or transfer of the property or assets securing such Debt.

- (g) the Bankruptcy Court shall enter, or the Borrowers shall seek or support the entry of, any order:

    - o (i) amending, supplementing, altering, staying, vacating, rescinding or otherwise modifying the Interim Order, the Final Order, the Sales Procedure Order or any other order in any manner which could reasonably be expected to result in a Material Adverse Effect,

    - o (ii) appointing: a Chapter 11 trustee that is not

|  | appointed as a result of a motion filed by the DIP Lender: or a responsible officer or an examiner pursuant to Section 1104 of the Bankruptcy Code with enlarged powers relating to the operation of the business of the Borrower (powers beyond those set forth in Section 1106(a)(3) and (4) and 1106(b) of the Bankruptcy Code) in the Bankruptcy Cases, unless such motion is agreed to by the DIP Lender<br><br>○ (iii) dismissing the Bankruptcy Case or converting the Bankruptcy Case to a Chapter 7 case,<br><br>○ (iv) granting relief from the automatic stay under Section 362 of the Bankruptcy Code to the holder of any claim against the Borrower, which order enables the holder of such claim to exercise any right or remedy against any property of the Borrowers, or<br><br>○ (v) except with respect to the proposed 363 Sale, approving the sale, transfer, lease, exchange, alienation or other disposition of all or substantially all of the assets, properties or equity interests of the Borrowers and their affiliates pursuant to Section 363 of the Bankruptcy Code or otherwise, without the consent of the DIP Lender and approval of the Bankruptcy Court.<br><br>• (h) The Borrowers or any affiliate shall seek to, or shall support (in any such case by way of motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of the Borrowers or any affiliate) any other Person's motion to, disallow in whole or in part the DIP Lender's claims or to challenge the validity and enforceability of the DIP Liens.<br><br>• (i) An application shall be filed by the Borrowers for the approval of, or there shall otherwise arise, any other superpriority claim in the Bankruptcy Cases which is *pari passu* with or senior to the claims of the DIP Lender against the Borrowers unless after giving effect to the transactions contemplated by such application, all secured obligations (whether contingent or otherwise) shall be paid in full in cash. The entry of an order authorizing the obtaining of credit or the incurrence of Debt by the Borrowers that is secured by a Lien on any or all of the Collateral, which is senior to or *pari passu* with the security interests and liens against the Collateral that is granted to the DIP Lender. |
|---|---|

- (j) From and after the date of entry thereof, the Interim Order shall cease to be in full force and effect (or shall have been vacated, stayed for a period in excess of five (5) days, reversed, modified or amended), in each case without the consent of the DIP Lender, and the Final Order shall not have been entered prior to such cessation (or vacatur, stay, reversal, modification or amendment).

- (k) The Final Order shall not have been entered by the Bankruptcy Court on or before thirty (30) days after the Filing Date; or from and after the date of entry thereof, the Final Order shall cease to be in full force and effect (or shall have been vacated, stayed for a period in excess of five (5) days, reversed, modified or amended), in each case without the consent of the DIP Lender.

- (l) The Borrowers shall make any payment on any Debt incurred before the Filing Date, other than as permitted under the Interim Order of Final Order, the DIP Budget, or as permitted hereunder and other than any payment of any Debt owing to the Borrower and any payment approved by the Bankruptcy Court of any Debt.

- (m) The Borrowers shall fail to comply with the terms of the Interim or Final Orders.

- (n) Any final judgments shall be entered against the Borrowers, any Debtor Affiliate, or any non-Debtor affiliate that owns an interest in the Collateral after the Filing Date and shall not have been paid, discharged or vacated or had execution thereof stayed pending appeal within thirty days after entry or filing of such judgments; or there shall be entered against the Borrowers or any affiliate a nonmonetary judgment, order or decree with respect to any claim or liability that accrued after the Filing Date which has or could be reasonably expected to have a material adverse effect, and there shall be any period of thirty consecutive days during which a stay of enforcement of such judgment, decree or order, by reason of a pending appeal or otherwise, shall not be in effect.

- (o) The Postpetition Documents after delivery thereof shall for any reason, except to the extent permitted by the terms thereof, cease to be in full force and effect and valid, binding and enforceable in accordance with their terms against the Borrowers or shall be repudiated by any of them, or cease to create a valid and perfected Lien of the priority required thereby on any of the collateral purported to be covered thereby, except to the extent permitted by the terms of the DIP Credit Agreement, or the Borrowers or any affiliate shall so

state in writing.

- (p) The commencement of any action against the DIP Lender by or on behalf of the Borrowers or any of its affiliates or any of their respective agents.

- (q):

    - (i) The Debtors' retention of Loretta Cross (or such other person the DIP Lender may consent to, in its sole discretion) as CRO shall not have been approved by the Bankruptcy Court within thirty (30) days of the Filing Date; or

    - (ii) Loretta Cross (or such other person the DIP Lender may consent to, in its sole discretion) shall cease to serve as the CRO of the borrowers and is not replaced within seven (7) days by a person acceptable to the DIP Lender.

- (r) The entry of an order authorizing recovery by any person from the Collateral or any adequate protection liens granted with respect thereto for any costs of preservation or disposition thereof under Section 506(c) of the Bankruptcy Code or (except as provided in the Final Order) authorizing the use of cash collateral without consent in writing by the DIP Lender. The entry of an order granting adequate protection with respect to pre-petition indebtedness (other than as provided in the Interim Order or the Final Order, or as otherwise approved by the DIP Lender and the Bankruptcy Court). Notwithstanding the foregoing, it shall only be a default hereunder if the lien of the DIP Lender is impaired or if the Debtors are required to make payments out of the DIP loan proceeds or the Collateral which are neither in the budget approved by the DIP Lender or otherwise consented to by the DIP Lender. It is expressly understood that the granting of a lien junior to the DIP Lender shall not be considered an impairment.

- (t) The filing by the Borrowers or any affiliate of any motion or proceeding which could reasonably be expected to result in material impairment of the DIP Lender's rights under this agreement; or a final determination by the Bankruptcy Court (or any other court of competent jurisdiction) with respect to any motion or proceeding brought by any other party which results in any material impairment of the DIP Lender's rights under this agreement.

- (u) The Borrower shall file, support, or seek confirmation of a plan of reorganization or liquidation, or such plan of reorganization or liquidation shall be confirmed in any of the Bankruptcy Cases, which does not provide for both termination of the Commitment and

| | |
|---|---|
| | payment in full of the DIP Obligations in cash on the effective date of such plan, without the prior written consent of the DIP Lender.<br><br>- (v) The entry of an order dismissing any of the Bankruptcy Cases that does not provide for the termination of the commitment and payment in full of the Postpetition debt in cash prior to dismissal, without the prior written consent of the DIP Lender; and<br><br>- (w) Any motions to sell the Collateral or approve procedures regarding the same, any plan or disclosure statement or supplements or amendments thereto, or any orders approving or amending any of the foregoing, are not in form and substance reasonably acceptable to the DIP Lender.<br><br>- (x) a statutory receiver other than Loretta Cross (or such other person to whom the DIP Lender may consent, in its sole discretion) is appointed. |
| **Rights and Remedies Upon Event of Default** | Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Lender may declare<br><br>- all Postpetition Debt owing under the Postpetition Documents to be immediately due and payable,<br><br>- (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains,<br><br>- (iii) the termination of the DIP Credit Agreement and any other Postpetition Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the Postpetition Liens or the Postpetition Obligations, and/or<br><br>- (iv) the termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral. |
| **Budget and Reporting Provisions** | The proceeds of loans made under the DIP Facility may only be used to pay those costs and expenses contained in the DIP Budget, at the times and for the purposes identified in such DIP Budget. Unfavorable variances of more than 10% on budgeted expense amounts will require advance approval from DIP Lender. Such approval will not be unreasonably withheld. Emergency expense requests will be submitted to DIP Lender as soon as practical for DIP Lender's approval., provided however, that expenditures required to be made to prevent imminent physical injuries to employees or immediate damage to the environment may be made to the extent of the availability under the DIP Facility prior to approval out of Available Cash. The DIP Budget, and any modification to or amendment or update of the DIP Budget, shall be in form and substance acceptable to the DIP Lender, in their sole and |

| | |
|---|---|
| | absolute discretion. The DIP Budget may be amended or modified in writing from time to time only with the written consent of the DIP Lender, in its sole and absolute discretion, and such amendment or modification shall not require the consent of the U.S. Trustee or approval of the Court. The Debtors shall update the DIP Budget from time to time, with such changes to be made promptly upon learning of a material change in expected revenues or expenses, and in any event at least once per month (provided that any update shall be in form and substance acceptable to the DIP Lender in their sole and absolute discretion, and shall be only deemed to be amended or modified based on their written consent), in accordance with the DIP Loan Documents. Any such modification of the DIP Budget, other than regular updates, shall be filed with the Court |
| **Sale Milestones** | The DIP Credit Agreement requires the Debtors to comply with the following milestone deadlines:<br><br>1. Within 15 days after the Filing Date (or such later date as the DIP Lender shall agree, in its sole discretion), the Debtors shall have filed a motion seeking approval to engage an investment banker or broker to sell the assets.<br><br>2. Within the earlier of: (1) 30 days after filing a motion to hire an investment banker; or (2) 45 days of the Filing Date (or such later date as the DIP Lender shall agree, in its sole discretion), the Debtors shall have filed a motion for a Sale Process Order.<br><br>3. A bid deadline (the "Bid Deadline") for the receipt of qualified bids from qualified bidders shall have occurred on or before the 120th day after the motion to engage an investment banker (or such later date as the DIP Lender shall agree, in its sole discretion).<br><br>4. Auction to be held on the 121st day after the motion to engage an investment banker/broker, unless such day is a legal holiday or weekend in which case the Auction shall be held on the next regular business day<br><br>5. Closing as soon as practical following court approval, with payment of all amounts under the DIP Facility to be paid at closing. |

Defined Terms   Terms used herein shall have the same meaning attributed to those terms in the DIP Motion or DIP Order.