**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**JUDY A. ROBBINS**
**UNITED STATES TRUSTEE**
**HECTOR DURAN**
**TRIAL ATTORNEY**
**515 Rusk, Suite 3516**
**Houston, Texas 77002**
**Telephone: (713) 718-4650 x 241**
**Fax: (713) 718-4670**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LUCA INT'L GROUP, L.L.C.,** *et al.,* | § | **CASE NO. 15-34221** |
| | § | **(Chapter 11)** |
| | § | |
| | § | **Hearing Date:** |
| **DEBTORS** | § | **October 19, 2015, at 2:00 p.m.** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO**
**DEBTORS' MOTION TO APPROVE KEY EMPLOYEE**
**INCENTIVE PLAN AND KEY EMPLOYEE RETENTION PLAN**

TO THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Judy A. Robbins, the United States Trustee for Region 7, including the Southern District of Texas ("UST"), by and through the undersigned counsel, who respectfully objects under 11 U.S.C. §§ 363(b) and 503(c) to the Debtors' Motion to Approve Key Employee Incentive Plan and Key Employee Retention Plan (the "Motion") [Dkt. No. 124], and represents as follows:

**I. Jurisdiction, Venue & Constitutional Authority to Enter a Final Order**

1.      The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(1).  Venue is proper in this district under 28

1

U.S.C. § 1408.

2.     The Court has constitutional authority to enter a final order with respect to this matter. A motion to authorize a debtor's entry into a proposed KEIP or KERP has no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew,* 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012)(discussing *Stern v. Marshall,* ---U.S. ---, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011)).  In the alternative, it is an essential part of the public bankruptcy scheme and triggers the "public rights" exception. *Id.* The United States Trustee consents to entry of a final judgment by the bankruptcy court.

3.     Judy A. Robbins is the duly appointed United States Trustee for the Southern District of Texas ("UST") under 28 U.S.C. § 581(a)(7).

4.     Pursuant to 11 U.S.C. § 307, the UST has standing to appear and be heard on any issue in a case or proceeding under the Bankruptcy Code.

5.     Pursuant to 28 U.S.C. § 586(a)(3), the UST is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Specifically, the UST is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code, including monitoring the progress of such cases and taking such actions as the UST deems to be appropriate to prevent undue delay in such progress. 28 U.S.C. § 586(a)(G).

## II. Factual Background

**A.     The Chapter 11 Filings**

6.     On August 6, 2015, the Debtors filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code.   Since the orders for relief under chapter 11 were entered, the Debtors

have operated as debtors in possession under 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

7. On August 24, 2014, the UST appointed the Official Committee of Equity Security Holders.

**B.     Wetherbee**

8. On August 28, 2014, the Debtors filed the Motion pursuant to sections 363(b) and 503(c).

9. The proposed KEIP and KERP will benefit Dale Wetherbee ("Wetherbee"), who is the Debtors' Chief Operating Officer. The Motion states that:

> While Mr. Wetherbee has a title that includes the word "officer" suggesting officer status, however, he is in reality not an insider. He was never appointed by a board and his duties have been limited to field planning, drilling, production, directing operations of the Houston office and other corporate functions and the scope of his authority is quite limited. Mr. Wetherbee is an "officer" in name only.

Motion, ¶ 17.

10. Despite this, the Motion goes on to describe Wetherbee as: (a) "the key executive employee to implement strategic projects, such as (i) reworking the shut-in wells, (ii) increasing production at the Belle Grove I well, and (iii) engaging with prospective purchasers and OFS to maximize potential return to creditors"; (b) performing "a variety of critical executive functions with regard to sales, operations and strategic management"; and (c) "this senior management employee". *Id.* at ¶¶ 17, 19 and 23.

**C.     KEIP**

11. The stated purposes of the proposed KEIP and KERP are (i) to encourage Wetherbee to stay focused on Luca's core operations to facilitate a smooth sales process, (ii) to align the interests of Wetherbee with those of the stakeholders, (iii) to reward Weatherbee as an essential

3

employee if critical goals are satisfied; and (iv) to motivate and preserve essential personnel through the sales process. *Id.* at ¶ 18.

12. As set forth in the Motion, Wetherbee would receive an incentive payment based upon the sales price of the Oil and Gas Properties to be measured on the earlier of (a) emerging from Chapter 11 bankruptcy or (b) the closing of a sale of substantially all the assets, subject to the following performance metrics:

- The DIP Loan is retired and paid in full;
- The sales price of the Oil and Gas Properties is at least $5,000,000;
- Wetherbee will receive 1% of the sales price if, and only if, the Oil and Gas Properties sell for at least $5,000,000;
- Wetherbee must be employed by the Debtors on the closing date of the sale of substantially all the Debtors' assets.

*Id.* at ¶ 21.

**D. KERP**

13. The proposed KERP provides Wetherbee with a retention bonus payment of $101,050, which is about thirty percent (30%) of his annual base salary. *Id.* at ¶ 25. The retention bonus will be paid at the closing of a sale or confirmation of a restructuring plan. *Id.* at ¶ 26.

### III. Grounds for Objection

**A. The Proposed KEIP Fails to Comply with § 503(c)(1) of the Bankruptcy Code**

**1. Wetherbee is an "Insider"**

14. The term "insider" of a corporation is defined to include a director, officer, or "person in control." 11 U.S.C. § 101(31)(B)(ii).

15. Following a line of cases developed under section 547, one bankruptcy court has adopted a functional test to determine if an employee is an insider for purposes of section 503(c). *See In re CEP Holdings, LLC,* 2006 WL 3422665 (Bankr. N. D. Ohio 2006); *but see In re Foothills*

4

*Texas, Inc.,* 408 B.R.573, 583 (Bankr. D. Del. 2009)(disagrees with *CEP Holdings*). In *CEP Holdings*, the court held that "insider" status "should be determined, at least in part, by reference to the payment recipient's control of the specific transaction under consideration and the impact of that transaction upon the debtor's creditors." *Id.* at *3. Under this approach, a critical issue in determining whether an employee is an "insider" for purposes of section 503(c) is whether that person was sufficiently high-ranking so as to influence the decision to adopt a KEIP or a KERP. The court acknowledged that other factors may also justify designating an employee to be an insider, including "the base salary compensation of the employee and the additional responsibilities that the employee is required to undertake in order to receive the additional compensation." *Id.*

16. According to the Motion, Wetherbee was eligible for an annual bonus of $101,050 on the August 1, 2015. Motion, ¶ 25. The CRO negotiated the proposed KEIP and KERP with Wetherbee "to tie the eligible bonus payment to a retention plan." *Id.* Wetherbee's base salary compensation is about $336,833. He is required to complete the sales process.

17. Under the functional test in *CEP Holdings*, Wetherbee, the Chief Operating Officer, should be considered an insider of the Debtors.

### 2. The Performance Metrics do not Represent a Challenge

18. The first performance metric requires that the DIP Loan be retired and paid in full. Under the Final DIP Order [Dkt. No. 133], the Debtors are required not to seek entry of an order confirming a plan unless the DIP Loan is paid in full in cash on the earlier of (a) the effective date of the plan or (b) the Termination Date (date DIP Lender provides written notice of an event of default or the maturity date of the DIP Loan). This performance metric is well within reach and will trigger incentive payments to Wetherbee pursuant to the proposed KEIP.

19. The second performance metric requires that the sales price of the Oil and Gas Properties

be at least $5,000,000. To the extent that the Oil and Gas Properties are realistically worth much more, this performance metric does not appear to be much of a challenge. The $5,000,000 benchmark appears to be a low hurdle that Wetherbee will most certainly clear to qualify for the incentive payment.

20. In order to be eligible for the incentive payment under the proposed KEIP, Wetherbee is required to have been continuously employed by the Debtors through the closing date of the sale of substantially all the Debtors' assets. *Id.* at ¶ 21. The proposed KEIP provides that Wetherbee forfeits all rights to incentive payments due to voluntary resignation or termination for cause. *Id.* at ¶ 22. In other words, Wetherbee has to stay to receive pay under the proposed KEIP.

21. Section 503(c)(1) prohibits transfers to insiders "for the purpose of inducing such person to remain with the debtor's business" except under stringent requirements. 11 U.S.C. § 503(c)(1). The performance metrics specified in the proposed KEIP do not represent a challenge. As a result, the primary purpose of the proposed KEIP appears to be retentive, rather than incentivizing in nature. Since Wetherbee has a preexisting duty to use his best efforts to maximize the estates, the proposed KEIP may be a disguised KERP. Moreover, the UST contends that the performance required under the proposed KEIP is well within the parameters of Wetherbee's existing job and responsibilities. Because Wetherbee will likely earn incentive payments merely by remaining with the Debtors through the closing date of the sale of substantially all the Debtors' assets, the Court should deny approval of the Motion because the Debtors have failed to establish that section 503(c)(1) does not apply.

**B.     The Proposed KEIP Fails to Comply with § 503(c)(3) of the Bankruptcy Code**

22. Section 503(c)(3) prohibits "transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case. . ." 11 U.S.C. § 503(c)(3).

23.     Courts have found that section 503(c)(3) of the Bankruptcy Code simply reiterates the standards of the business judgment rule for assessing transactions outside the ordinary course of business under section 363 of the Bankruptcy Code.  *See, e.g., In re Velo Holdings, Inc.,* 472 B.R. 201, 211-12 (Bankr. S.D.N.Y. 2012); *see also In re Dana Corp.,* 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) ("*Dana II")*(section 503(c)(3) transfers outside the ordinary course of business are assessed by the same business judgment test applied under section 363(b) of the Bankruptcy Code)*; but see In re Pilgrim's Pride Corp.,* 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009)(section 503(c)(3) sets a higher standard of review and should not be equated to the business judgment rule as applied under section 363; to do so would render section 503(c)(3) redundant).

24.     The Fifth Circuit has not adopted any factors for evaluating a KEIP.  However, courts consider the following factors to determine whether the structure of and the process for developing a KEIP is appropriate under the business judgment standard:

   (1)     whether there is a reasonable relationship between the plan proposed and the results to be obtained;

   (2)     whether the cost of the plan is reasonable in the context of the debtor's assets, liabilities, and earning potential;

   (3)     whether the scope of the plan is fair and reasonable;

   (4)     whether the plan is consistent with industry standards;

   (5)     whether the debtor engaged in due diligence in investigating the need for a plan, in analyzing the need to incentivize key employees, and in investigating the types of plans generally applicable in the particular industry; and

   (6)     whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*Dana II* at 576-77.  It is not clear that the Debtors have satisfied each of the *Dana II* factors.  Furthermore, under *Dana II*, the benchmarks for the payment of the incentives must be "difficult

targets to reach." *Dana II* at 583. At this juncture in the cases, the performance metrics and criteria appear to be reasonably within reach.

25. In *Pilgrim's Pride Corp.*, the bankruptcy court interpreted section 503(c)(3) to require, in addition to the business judgment standard, that the proposed transfer or obligation be in the best interests of creditors and the debtor's estate. *Pilgrim's Pride Corp.* at 237.

26. The Debtors bear the burden of proof to show that they have met the statutory requirements of section 503(c)(3) of the Bankruptcy Code. The Court should deny the Motion because the Debtors have failed to meet their burden of proof to show that the proposed KEIP is justified under the standards of the business judgment rule and the best interests of creditors and the Debtors' estates.

**B.    The Proposed KERP Fails to Comply with § 503(c)(1) of the Bankruptcy Code**

27. Section 503 provides for payment of a retention bonus if certain statutory requirements are met. A court may award a retention bonus payment to an insider if it finds: (a) the retention bonus is essential because the employee has a bona fide offer from another employer at the same or greater rate of compensation; (b) the services provided by the employee were essential; and (c) the bonus is within a certain ratio of payments made to nonmanagement employees or to the insider himself.

28. The Debtors bear the burden of proof to show that they have met the statutory requirements of section 503(c)(1) of the Bankruptcy Code. The Court should deny the Motion because the Debtors have failed to meet their burden of proof to show that the proposed KERP satisfies the statutory requirements of section 503(c)(1).

### IV. Relief Requested

WHEREFORE, the UST requests that the Court enter an order denying approval of the Motion and of the proposed KEIP and KERP, and for any and all further relief as may be

equitable and just.

Dated: September 24, 2015                                    Respectfully Submitted,

                                                                 JUDY A. ROBBINS
                                                                 UNITED STATES TRUSTEE

                                        By:    /s/ Hector Duran
                                                  Hector Duran
                                                  State Bar No. 00783996
                                                  515 Rusk, Suite 3516
                                                  Houston, Texas   77002
                                                  (713) 718-4650 ext. 241
                                                  (713) 718-4670 Fax

## CERTIFICATE OF CONFERENCE

       I hereby certify that on September 24, 2015, I conferred with Edward L. Rothberg, Debtors' counsel, and with Loretta Cross, the CRO, who agreed to produce Mr. Wetherbee's employment agreement. At this point, the matter could not be resolved and requires court determination.

                                                               /s/ Hector Duran
                                                               Hector Duran, Trial Attorney

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing was served by electronic means on all PACER participants on this 24th day of September, 2015.

                                                               /s/ Hector Duran
                                                               Hector Duran, Trial Attorney