## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| LUCA INTERNATIONAL GROUP | § | CASE NO. 15-34221-H2-11 |
| LLC[1] | § | |
| Debtors. | § | JOINTLY ADMINISTERED |

**LIQUIDATING TRUSTEE RANDY WILLIAMS' PAGE /LINE DESIGNATIONS FOR DEPOSITION OF JOHN CHU DATED JULY 12, 2017, FOR PURPOSES OF TRIAL -- Copy Attached as Appendix # 1**

| Page 6 | Line 8 | to | Page 6 | Line 9 |
|---|---|---|---|---|
| Page 8 | Line 2 | to | Page 8 | Line 13 |
| Page 8 | Line 17 | to | Page 8 | Line 22 |
| Page 9 | Line 4 | to | Page 9 | Line 7 |
| Page 9 | Line 15 | to | Page 9 | Line 19 |
| Page 9 | Line 23 | to | Page 10 | Line 2 |
| Page 18 | Line 12 | to | Page 20 | Line 12 |
| Page 20 | Line 19 | to | Page 20 | Line 22 |
| Page 21 | Line 21 | to | Page 22 | Line 2 |
| Page 22 | Line 25 | to | Page 23 | Line 10 |
| Page 24 | Line 3 | to | Page 24 | Line 10 |
| Page 26 | Line 1 | to | Page 26 | Line 10 |
| Page 26 | Line 18 | to | Page 27 | Line 12 |
| Page 28 | Line 5 | to | Page 28 | Line 19 |
| Page 31 | Line 1 | to | Page 32 | Line 1 |
| Page 32 | Line 16 | to | Page 32 | Line 25 |
| Page 33 | Line 16 | to | Page 35 | Line 23 |
| Page 36 | Line 16 | to | Page 36 | Line 25 |
| Page 37 | Line 8 | to | Page 37 | Line 25 |
| Page 38 | Line 6 | to | Page 38 | Line 17 |
| Page 39 | Line 6 | to | Page 39 | Line 21 |
| Page 39 | Line 23 | to | Page 40 | Line 3 |
| Page 40 | Line 5 | to | Page 40 | Line 17 |
| Page 40 | Line 19 | to | Page 40 | Line 23 |
| Page 42 | Line 10 | to | Page 42 | Line 13 |

---

1 The Debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Luca International Group LLC (1086), Luca International Group (Texas) LLC (5577), Luca Operation, LLC (0343), Luca Barnet Shale Joint Venture, LLC (5340), Luca Energy Fund LLC (0677), Luca Energy Resources, LLC (3896), Luca Resources Group, LLC (1699), Luca I, LP (4104), Luca II, LP, (9778), Luca Oil, LLC (8161), Luca To-Kalon Energy LLC (3922), Luca Oil II Joint Venture (6604).

| Page 45 | Line 4 | to | Page 45 | Line 17 |
| Page 45 | Line 19 | to | Page 46 | Line 1 |
| Page 46 | Line 4 | to | Page 46 | Line 22 |
| Page 47 | Line 12 | to | Page 48 | Line 5 |
| Page 51 | Line 3 | to | Page 52 | Line 1 |
| Page 52 | Line 3 | to | Page 54 | Line 15 |
| Page 54 | Line 22 | to | Page 60 | Line 1 |
| Page 60 | Line 7 | to | Page 60 | Line 22 |
| Page 61 | Line 1 | to | Page 61 | Line 25 |
| Page 62 | Line 6 | to | Page 62 | Line 20 |
| Page 62 | Line 25 | to | Page 63 | Line 21 |
| Page 63 | Line 23 | to | Page 63 | Line 25 |
| Page 64 | Line 2 | to | Page 63 | Line 8 |
| Page 64 | Line 10 | to | Page 64 | Line 12 |
| Page 64 | Line 14 | to | Page 64 | Line 17 |
| Page 64 | Line 19 | to | Page 64 | Line 25 |
| Page 65 | Line 11 | to | Page 65 | Line 22 |
| Page 65 | Line 24 | to | Page 65 | Line 24 |
| Page 66 | Line 1 | to | Page 67 | Line 12 |
| Page 67 | Line 21 | to | Page 69 | Line 10 |
| Page 69 | Line 12 | to | Page 70 | Line 10 |
| Page 70 | Line 12 | to | Page 70 | Line 14 |
| Page 70 | Line 16 | to | Page 70 | Line 19 |
| Page 70 | Line 21 | to | Page 70 | Line 24 |
| Page 71 | Line 10 | to | Page 71 | Line 10 |
| Page 71 | Line 13 | to | Page 71 | Line 25 |
| Page 72 | Line 16 | to | Page 73 | Line 15 |
| Page 73 | Line 17 | to | Page 74 | Line 4 |
| Page 78 | Line 1 | to | Page 78 | Line 9 |
| Page 79 | Line 17 | to | Page 80 | Line 6 |
| Page 80 | Line 17 | to | Page 80 | Line 23 |
| Page 89 | Line 7 | to | Page 90 | Line 10 |
| Page 90 | Line 24 | to | Page 92 | Line 23 |
| Page 97 | Line 4 | to | Page 97 | Line 25 |
| Page 98 | Line 18 | to | Page 98 | Line 25 |
| Page 101 | Line 10 | to | Page 101 | Line 21 |
| Page 102 | Line 3 | to | Page 102 | Line 14 |
| Page 102 | Line 22 | to | Page 103 | Line 2 |
| Page 103 | Line 9 | to | Page 103 | Line 12 |
| Page 104 | Line 2 | to | Page 104 | Line 6 |
| Page 105 | Line 25 | to | Page 107 | Line 9 |
| Page 107 | Line 17 | to | Page 108 | Line 1 |

Respectfully Submitted,

HOOVER SLOVACEK LLP

*/s/Brendetta A. Scott*

By:_____

BRENDETTA A. SCOTT
State Bar No. 24012219
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395
**ATTORNEY FOR LIQUIDATING TRUSTEE
RANDY WILLIAMS**

## CERTIFICATE OF SERVICE

        I hereby certify that on July 17, 2017, a true and correct copy of the foregoing Line and Page Designation of John Chu's Deposition was forwarded via the Court's ECF notification system to the parties listed below.

*/s/ Brendetta A. Scott*
BRENDETTA A. SCOTT

**15-34221 Notice will be electronically mailed to:**

John Baumgartner
jbaumgartner@srr.com

Brandon Augustus Brown on behalf of Creditor Belle Grove Industrial Park, Inc.
bbrown@stewartrobbins.com, kheard@stewartrobbins.com

Brandon Augustus Brown on behalf of Creditor Belle Grove Plantation, LLC
bbrown@stewartrobbins.com, kheard@stewartrobbins.com

Deirdre Carey Brown on behalf of Debtor Luca International Group LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Barnet Shale Joint Venture, LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Energy Fund LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Energy Resources, LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca I, LP
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca II, LP
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca International Group (Texas) LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Oil II Joint Venture
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Oil, LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Operation, LLC

brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy
1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca Resources Group, LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy
1@hooverslovacek.com

Deirdre Carey Brown on behalf of Joint Debtor Luca To-Kalon Energy, LLC
brown@hooverslovacek.com,
skerrett@hooverslovacek.com;deirdrecbrown@yahoo.com;brown.hsllp@gmail.com;bankruptcy
1@hooverslovacek.com

Jeffrey D. Carruth on behalf of Creditor Weatherford US LP
jcarruth@wkpz.com, jcarruth@aol.com;ATTY_CARRUTH@trustesolutions.com

Brooke B Chadeayne on behalf of Creditor Committee Official Committee of Equity Securities
Holders
bchadeayne@lockelord.com, dsmith@lockelord.com

Sonia Anne Chae on behalf of Creditor Sonia Chae U.S. Securities & Exchange Commission
chaes@sec.gov, chaes@sec.gov

Sonia Anne Chae on behalf of Creditor Sonia Chae United States Securities & Exchange
Commission
chaes@sec.gov, chaes@sec.gov

Hoa T Cooc on behalf of Creditor Guozhu Long
h.cooc@cooclaw.com

Hoa T Cooc on behalf of Creditor Jianguo Qian
h.cooc@cooclaw.com

Hoa T Cooc on behalf of Creditor Xiuhua Zhang
h.cooc@cooclaw.com

Loretta Cross
lcross@srr.com

Tony L. Draper on behalf of Interested Party Hanover Insurance Company
tdraper@wwmlawyers.com

Hector Duran on behalf of U.S. Trustee US Trustee
Hector.Duran.Jr@usdoj.gov

Philip G Eisenberg on behalf of Creditor Committee Official Committee of Equity Securities Holders
peisenberg@lockelord.com

Joseph G Epstein on behalf of Creditor Hebei Haitian Construction Co. Ltd.
joe@epsteintexaslaw.com, info@epsteintexaslaw.com

Joseph G Epstein on behalf of Creditor Jin Ming Hua
joe@epsteintexaslaw.com, info@epsteintexaslaw.com

Joseph G Epstein on behalf of Creditor Xin Zhou
joe@epsteintexaslaw.com, info@epsteintexaslaw.com

Joseph G Epstein on behalf of Creditor Zhou Yu
joe@epsteintexaslaw.com, info@epsteintexaslaw.com

Vianey Garza on behalf of Counter-Defendant Bingqing Yang
vgarza@cagehill.com

Vianey Garza on behalf of Plaintiff Bingqing Yang
vgarza@cagehill.com

Steven William Golden on behalf of Creditor Committee Official Committee of Equity Securities Holders
steven.golden@lockelord.com

Steven William Golden on behalf of Creditor Committee Official Committee of Equity Security Holders
steven.golden@lockelord.com

Steven William Golden on behalf of Creditor Committee Official Committee of Equity Security Holders
sgolden@pszjlaw.com

Tara L Grundemeier on behalf of Creditor Harris County
houston_bankruptcy@publicans.com

Elizabeth M Guffy on behalf of Counter-Claimant Official Committee of Equity Security Holders
eguffy@lockelord.com, eguffy@ecf.epiqsystems.com

Elizabeth M Guffy on behalf of Creditor Committee Official Committee of Equity Securities Holders
eguffy@lockelord.com, eguffy@ecf.epiqsystems.com

Joseph Patrick Hebert on behalf of Creditor Select Oilfield Services, LLC

jphebert@liskow.com, cguidry@liskow.com

Courtney Hull on behalf of Creditor Texas Comptroller of Public Accounts
bk-chull@texasattorneygeneral.gov, sherri.simpson@texasattorneygeneral.gov

Hunter Brandon Jones on behalf of Creditor Meiyu "Shelley" You
brandon@bondsellis.com

Hunter Brandon Jones on behalf of Defendant Meiyu "Shelley" You
brandon@bondsellis.com

T. Josh Judd on behalf of Debtor Luca Barnet Shale Joint Venture, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Energy Fund LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Energy Resources, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca I, LP
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca II, LP
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca International Group (Texas) LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Oil II Joint Venture
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Oil, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Operation, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca Resources Group, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Debtor Luca To-Kalon Energy, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

T. Josh Judd on behalf of Plaintiff Luca Operation, LLC
jjudd@andrewsmyers.com, BRatliff@andrewsmyers.com;ncosta@andrewsmyers.com

Daniel J Kasprzak on behalf of Defendant Collarini Energy Staffing, Inc.
dkasprzak@jdkklaw.com

Sara Mya Keith on behalf of Creditor Collarini Energy Staffing Inc
skeith@jdkglaw.com, msolis@jdkglaw.com

Don J. Knabeschuh on behalf of Creditor Collarini Energy Staffing Inc
dknabecf@gmail.com

Don J. Knabeschuh on behalf of Defendant Collarini Energy Staffing, Inc.
dknabecf@gmail.com

George A. Kurisky, Jr. on behalf of Creditor Hawkeye Stratigraphic, Inc.
gkurisky@jdkklaw.com,
kgoodman@jdkklaw.com;dabreo@jdkglaw.com;ttribble@jdkglaw.com;bborrego@jdkglaw.com
;cgrimm@jdkglaw.com

Steven A. Leyh on behalf of Creditor Ric Rabon & Associates, LLC
sleyh@lpmfirm.com, khaley@lpmfirm.com;lpm.ecf@gmail.com;aaguilar@lpmfirm.com

Charles E Long on behalf of Creditor Bingqing Yang
clong@cagehill.com, cagehill@cagehill.com

Charles E Long on behalf of Creditor Bing Yang
clong@cagehill.com, cagehill@cagehill.com

Charles E Long on behalf of Creditor Bingqing Yang
clong@cagehill.com, cagehill@cagehill.com

Charles E Long on behalf of Creditor Committee Bingqing Yang
clong@cagehill.com, cagehill@cagehill.com

Charles E Long on behalf of Plaintiff Bingqing Yang
clong@cagehill.com, cagehill@cagehill.com

Luca International Group LLC
kyle.li128@gmail.com

Simon Richard Mayer on behalf of Creditor Polycomp Trust Company FBO Ira J. Boren
srmayer@hwa.com, scastillo@hwa.com

Curtis W McCreight on behalf of Debtor Luca International Group LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Barnet Shale Joint Venture, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Energy Fund LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Energy Resources, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca I, LP
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca II, LP
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca International Group (Texas) LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Oil II Joint Venture
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Oil, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Operation, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca Resources Group, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor Luca To-Kalon Energy, LLC
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

John P Melko on behalf of Interested Party Schumann/Steier Holdings, LLC
jmelko@gardere.com, ggattis@gardere.com;swilson@gardere.com;rdiep@gardere.com

John A Mouton, III on behalf of Creditor T & P Well Testers of Lafayette, Inc.
john@jmoutonlaw.com, tammy@jmoutonlaw.com

John A Mouton, III on behalf of Interested Party T&P Well Testers of Lafayette, Inc.
john@jmoutonlaw.com, tammy@jmoutonlaw.com

Steven P Ordaz
sordaz@bmcgroup.com, ecfbk@bmcgroup.com

Patricia Williams Prewitt on behalf of Creditor Southern Natural Gas Company, LLC
pwp@pattiprewittlaw.com

Michael Kevin Riordan on behalf of Interested Party Schumann/Steier Holdings, LLC
mriordan@gardere.com, ggattis@gardere.com;rdiep@gardere.com

Edward L Rothberg on behalf of Debtor Luca Barnet Shale Joint Venture, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Energy Fund LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Energy Resources, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca I, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca II, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca International Group (Texas) LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca International Group LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Oil II Joint Venture
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Oil, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Operation, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca Resources Group, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Debtor Luca To-Kalon Energy, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Barnet Shale Joint Venture, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Energy Fund LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Energy Resources, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca I, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca II, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca International Group (Texas) LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Oil II Joint Venture
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Oil, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Operation, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca Resources Group, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor Luca To-Kalon Energy, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Other Prof. BMC Group, Inc.
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Barnet Shale Joint Venture, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Energy Fund LLC

rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Energy Resources, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca I, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca II, LP
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca International Group (Texas) LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca International Group LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca International Group LLC, et al.
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Oil Joint Venture
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Oil, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Operation, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca Resources Group, LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Plaintiff Luca To-Kalon Energy LLC
rothberg@hooverslovacek.com, ELRbankruptcy@gmail.com,hsllpbankruptcy@gmail.com

Joseph Peak Rovira on behalf of Creditor Texas Tower Limited
josephrovira@andrewskurth.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Barnet Shale Joint Venture, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Energy Fund LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Energy Resources, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca I, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca II, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca International Group (Texas) LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca International Group LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Oil II Joint Venture
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Oil, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Operation, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca Resources Group, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Counter-Claimant Luca To-Kalon Energy, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Barnet Shale Joint Venture, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Energy Fund LLC
scott@hooverslovacek.com,

phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Energy Resources, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca I, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca II, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca International Group (Texas) LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca International Group LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Oil II Joint Venture
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Oil, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Operation, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca Resources Group, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Debtor Luca To-Kalon Energy, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Barnet Shale Joint Venture, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Energy Fund LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Energy Resources, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca I, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca II, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca International Group (Texas) LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca International Group LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Oil II Joint Venture
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Oil, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Operation, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca Resources Group, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Defendant Luca To-Kalon Energy, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Financial Advisor John Baumgartner
scott@hooverslovacek.com,

phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Barnet Shale Joint Venture, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Energy Fund LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Energy Resources, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca I, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca II, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca International Group (Texas) LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Oil II Joint Venture
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Oil, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Operation, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca Resources Group, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Joint Debtor Luca To-Kalon Energy, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Other Prof. BMC Group, Inc.
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Other Prof. Randy Williams
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Barnet Shale Joint Venture, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Energy Fund LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Energy Resources, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca I, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca II, LP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca International Group (Texas) LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca International Group LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca International Group LLC, et al.
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Oil Joint Venture
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Oil, LLC
scott@hooverslovacek.com,

phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Operation, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca Resources Group, LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Plaintiff Luca To-Kalon Energy LLC
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Spec. Counsel BB&W LLP
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Brendetta Anthony Scott on behalf of Trustee Randy Williams
scott@hooverslovacek.com,
phelan@hooverslovacek.com,bankruptcy1@hooverslovacek.com,Scott.hsllp@gmail.com

Branch Masterson Sheppard on behalf of Creditor Hawkeye Stratigraphic, Inc.
bsheppard@gallowayjohnson.com, kreid@gallowayjohnson.com

Owen Mark Sonik on behalf of Creditor Alief Independent School District
osonik@pbfcm.com, tpope@pbfcm.com;osonik@ecf.inforuptcy.com

Robert W St Clair on behalf of Creditor Guangxi Huashuo Investment Group
rstclair@lbklawyers.com, jchang@lbklawyers.com

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV

Charles Brittain Walther on behalf of Interested Party Hanover Insurance Company
bwalther@wwmlawyers.com

Gregg S Weinberg on behalf of Other Prof. John Chu
gweinberg@rmwbhlaw.com,
mrichards@rmwbhlaw.com;gdubey@rmwbhlaw.com;dholiday@rmwbhlaw.com;mrabe@rmwbhlaw.com

Sam X J Wu on behalf of Creditor Baoxin Shan
samwulaw@yahoo.com

Jason J.L Yang on behalf of Creditor Meiyu "Shelley" You

Jason@kennerlawgroup.com, stacy@kennerlawgroup.com

Jason J.L Yang on behalf of Defendant Meiyu "Shelley" You
Jason@kennerlawgroup.com, stacy@kennerlawgroup.com

Jason J.L Yang on behalf of Plaintiff Meiyu You
Jason@kennerlawgroup.com, stacy@kennerlawgroup.com

1              IN THE UNITED STATES BANKRUPTCY COURT

2                FOR THE SOUTHERN DISTRICT OF TEXAS

3                        HOUSTON DIVISION

4

5    In Re:                      Chapter 11

6    LUCA INTERNATIONAL GROUP      Case No. 15-34221-H2-11
     LLC, et al.,

7                                 Jointly Administered
          Debtors.

8    ~~~~~~~~~~~~~~~~~~~~~~~/

9

10                        DEPOSITION OF

11                          JOHN CHU

12

13

14                        July 12, 2017

15                          9:08 a.m.

16

17

18              25 Kearny Street, Suite 302

19                San Francisco, California

20

21

22                        **APPENDIX #1**

23

24

     Reporter:  Diane M. Winter, RMR, CRR, CSR 3186

25



1                  DEPOSITION OF JOHN CHU

2                       July 12, 2017

3                           * * *

4                        JOHN CHU,

5   called as a witness herein and who, being first duly

6   sworn, was examined and testified as follows:

7                 EXAMINATION BY MS. SCOTT

8        Q.   Please state your name for the record.

9        A.   John Chu.

10       Q.   Mr. Chu, I am Brendetta Scott.  I represent

11  the liquidating trustee in the Southern District of

12  Texas, the Houston Division, when it comes to a

13  bankruptcy, it is the Luca International Group LLC, et

14  al.

15            MR. JONES:  I'm sorry, but I can't hear.

16            MS. SCOTT:  I was introducing myself.

17            I am Brendetta Scott representing the

18  liquidating trustee, Randy Williams, who is the trustee

19  over the bankruptcy estate in the Southern District of

20  Texas, Houston Division.

21            THE REPORTER:  Are you still there?

22            (Off the record from 9:07 to 9:07.)

23            MS. SCOTT:  Can you hear me now?

24       Q.   (BY MS. SCOTT)  I was introducing myself.

25  I am Brendetta --



JOHN CHU                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                          8

```
 1          A.   Since 1982.

 2          Q.   And where are you employed?

 3          A.   I'm a partner with the Law Firm of

 4  Corporate Counsel Law Group LLP in San Francisco.

 5          Q.   And how long have you been at that firm?

 6          A.   To the best of my recollection since 1990.

 7          Q.   Okay.  And you represent Ms. Bingqing Yang?

 8          A.   Yes, I do.

 9          Q.   And she's also known as Joyce, I believe;

10  is that correct?

11          A.   Yes, I believe she uses that American name.

12          Q.   And she also goes by Bing?

13          A.   Yes.

14          Q.   Are there any other names that she goes by

15  that you are aware of?

16          A.   Not that I know of.

17          Q.   And Ms. Yang is currently in China; is that

18  correct?

19          A.   She is.

20          Q.   And she's there due to health reasons or

21  issues, is that my understanding -- is that the correct

22  understanding?

23          A.   It's sort of a long story.  It's health

24  reasons now.  Originally she went on a quest to procure

25  working capital for Luca.  But that was two years ago
```



1    now, I think.

2              Q.   And she's been there ever since?

3              A.   Yes, she has.

4              Q.   Her address here in the United States is

5    2822 Driscoll Road, Fremont, California; is that

6    correct?

7              A.   Yes.  It still is her primary residence.

8    Her mother is still living there.  Her sister is still

9    living there.  So yes, that's sort of their family home

10   here.

11             MS. SCOTT:   Okay.  So let's get to my first

12   exhibit here.

13             (Deposition Exhibit 1 was

14             marked for identification.)

15             Q.   (BY MS. SCOTT)  What I've just handed you

16   is the amended notice which includes the subpoena that

17   you were served with to appear here today.  And you did

18   agree to appear voluntarily; is that correct?

19             A.   Yes, I did.

20             Q.   And is this subpoena the subpoena that you

21   are voluntarily appearing for here today?

22             A.   Yes, it is.

23             Q.   That subpoena also required you to produce

24   documents.  And I did receive an email yesterday

25   evening regarding documents that are in response to the



1    subpoena; is that correct?

2          A.   Yes.  I emailed everyone yesterday.

3          Q.   Do you have any other documents in your

4    custody, control, or possession that are relevant to

5    that subpoena that you have not provided to me?

6          A.   Not that I'm aware of.

7          Q.   And if you become aware of any would you

8    provide those documents to me immediately, please?

9          A.   Yes.

10         MS. SCOTT:  Okay.  So I'm trying to make

11   sure that we flow easily with the exhibits.  So do we

12   need to just work --

13         (Off the record from 9:12 to 9:13.)

14         MS. SCOTT:  All right.  Here's the next

15   exhibit.  This is the stipulated judgment.  Pass that

16   to you.

17         (Deposition Exhibit 2 was

18         marked for identification.)

19         Q.   (BY MS. SCOTT)  Is this the stipulated

20   judgment that was obtained by Ms. You against Ms. Yang?

21         MR. YUN:  And what number is this, just for

22   the record?

23         MS. SCOTT:  Two, Exhibit 2.

24         MR. YUN:  Okay.  Thank you.

25         THE WITNESS:  Yes, I've seen this before



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
18

```
1    reflect "road."
2            A.    I'm pretty sure it's "drive."
3            Q.    All right.  Either way --
4            A.    Yes.
5            Q.    -- it's the property that was the subject
6    of this proceeding; is that correct?
7            A.    Yes.
8            MS. SCOTT:  I think we're at Exhibit 9 at
9    this point.
10           (Deposition Exhibit 9 was
11           marked for identification.)
12           Q.    (BY MS. SCOTT)  All right.  What I'm
13   handing to you now as Exhibit 9, which is an order
14   dated March 22nd of 2016; is that correct?
15           A.    Yes.
16           Q.    And this is in case number HG15785974 in
17   the Superior Court of the State of California, County
18   of Alameda; is that correct?
19           A.    Yes.
20           Q.    Same proceeding, Ms. You versus Ms. Yang?
21           A.    Same proceeding, yes.
22           Q.    You also appeared for that particular
23   proceeding as well?
24           A.    Yes, I did.  And I should add, this
25   particular proceeding in Alameda County was an action
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
19

1   filed by Ms. You for the enforcement of her LA County

2   judgment that was a prior exhibit.  This is an

3   enforcement proceeding.

4           Q.    Correct.  And you are referring to the

5   stipulated judgment that was also secured by an

6   abstract of judgment?

7           A.    Yes.

8           Q.    Okay.  And this order that we are looking

9   at, this is Exhibit No. 9, you have reviewed this order

10  and approved it as to form as counsel for Ms. Yang; is

11  that correct?

12          A.    Yes, I did.  Although there is no signature

13  there to that effect, I did review the order before it

14  was submitted.

15          Q.    Yes.  And this order is in effect signed by

16  a judge of the Superior Court, Grillo, I believe; is

17  that correct?

18          A.    Yes.

19          Q.    It is reflected on Exhibit 9, correct?

20          A.    Yes.

21          Q.    On page 2 of that order, one, two, three,

22  third paragraph, second line there is language in the

23  order that states, "In both parties' papers and at a

24  hearing, the parties agreed that the real property is

25  subject to liens and encumbrances senior to judgment



JOHN CHU                                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                                   20

 1  creditor's abstract of judgment recorded on July 6th,

 2  2015, at a homestead exemption, as follows:", and then

 3  it goes on to list "a. A first deed of trust recorded

 4  on August 22nd, 2008 by CitiMortgage, Inc. for

 5  $417,000; A second deed of trust recorded on March

 6  20th, 2015, by Polycomp Trust Company for $650,000;

 7  c.  A homestead exemption by judgment debtor Bingqing

 8  Yang of $100,000."

 9            Did I read that correctly?

10       A.   Yes, you did.  And I see that the order

11  says "Driscoll Road," so maybe my memory is incorrect.

12  Maybe it is Driscoll Road, not Driscoll Drive.

13       Q.   Yes.  Thank you for that clarification.

14            So the court therefore found that senior

15  liens and encumbrances, plus the homestead exemption

16  totals $1,167,000; is that correct?

17       A.   Yes.

18            MR. JONES:  Objection, form.

19       Q.   (BY MS. SCOTT)  And the court also found in

20  this order that the fair market value of real property,

21  being the Driscoll property, to be $1,556,000?

22       A.   Yes.

23            MS. SCOTT:  We are now on Exhibit 10.

24            (Deposition Exhibit 10 was

25            marked for identification.)



```
 1              Q.   (BY MS. SCOTT)  Mr. Chu, is this the
 2   response that you filed in that proceeding under case
 3   number HG15785974 for Ms. Yang?
 4              A.   Yes, it is.
 5              Q.   And this was filed on April 11th, 2016; is
 6   that correct?
 7              A.   Yes, correct.
 8              Q.   On page 2 under paragraph 2 it discussed a
 9   second lien held by Polycomp Trust; is that correct?
10              A.   Yes.
11              Q.   $650,000, the original balance for that
12   loan, correct?
13              A.   Correct.
14              Q.   And it also goes on to say that Polycomp is
15   now approximately owed about $25,000; is that correct?
16              A.   Yes.  That -- that -- that was based on my
17   understanding at the time, yes.
18              Q.   And that was back on April 7th of 2016,
19   around that time?
20              A.   Yes.
21              MS. SCOTT:  Okay.  We're now on Exhibit 11.
22              (Deposition Exhibit 11 was
23              marked for identification.)
24              Q.   (BY MS. SCOTT)  This is an order granting
25   the sale of dwelling filed in Alameda County on May
```



JOHN CHU                                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                        22

 1    23rd of 2016; is that correct?

 2         A.    Yes.

 3         Q.    In the Superior Court of the State of

 4    California, County of Alameda, correct?

 5         A.    Correct, yes.

 6         Q.    Case number HG15785974, correct?

 7         A.    Correct.

 8         Q.    This is the Ms. You against Ms. Yang

 9    proceeding, right?

10         A.    Yes.

11         Q.    You actually appeared in that proceeding as

12    well, correct?  Let's see, one, two, three, fourth

13    line.

14         A.    I did appear, yes.

15         Q.    Okay.  States "Judgment debtor appeared by

16    counsel, John Chu."

17              All right.  Turn to page 2, if you will,

18    please.

19              MR. JONES:  Can you tell me the date of

20    that exhibit again.  I'm sorry.

21              MS. SCOTT:  Let's see, it was signed May

22    23rd, 2016.

23              MR. JONES:  Thank you.  Sorry to interject.

24              MS. SCOTT:  No problem.

25         Q.    (BY MS. SCOTT)  Okay.  Under No. 1 of



JOHN CHU                                        July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                        23

1    page 2 it states that there are -- "The liens and

2    encumbrances recorded against the real property owned

3    by judgment debtor located at and commonly known as

4    2822 Driscoll Road, Fremont, California, 94539 ('real

5    property') that are senior to judgment creditor's

6    abstract of judgment recorded on July 6th, 2015, are

7    attached herein as Exhibit 1, the litigation guarantee,

8    and are as follows."

9              Did I read that portion correctly?

10        A.   Yes.

11        Q.   And then it goes on to list the first deed

12   of trust recorded by CitiMortgage for $417,000 on

13   August 22nd, 2008; second lien for Polycomp for

14   $650,000, dated March 20th, 2015; Ms. Yang's homestead

15   exemption of $100,000; and it again gives that total

16   number of liens, senior liens and encumbrances in the

17   homestead of $1,167,000; is that correct?

18        A.   Yes.

19        Q.   And the court again found that based on

20   uncontroverted declaration of Mr. Yang, Jason Yang, who

21   I believe was counsel for Ms. You in this proceeding,

22   correct?

23        A.   Yes.

24        Q.   Again the court also found, based on the

25   uncontroverted declaration of Jason Yang, counsel for



 1    Ms. You at that time, correct?

 2              A.    Yes.   Counsel for Ms. You at that time.

 3              Q.    Ms. You, yes.   The court found the fair

 4    market value of the real property was $1,556,187.96; is

 5    that correct?

 6              A.    Yes.

 7              Q.    And the court granted the judgment

 8    creditor, Ms. You, her application for an order to sell

 9    the real property, correct?

10              A.    Correct.

11              Q.    Look at paragraph 4 on page 3.   Would you

12    read paragraph 4 for me, please.

13              A.    Aloud or to myself?

14              Q.    Aloud, please.

15              A.    Four, "If the real property is sold, then

16    the distribution of the proceeds from the sale of the

17    real property shall be distributed in the following

18    order:

19              Subparagraph (a), "First, to discharge the

20    amounts owed on the senior liens and encumbrances on

21    the real property by CitiMortgage, Inc. and Polycomp

22    Trust Company (not including any prepayment

23    penalties)."

24              Subparagraph (b), "Second, to judgment

25    debtor in the amount of the homestead exemption for



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
26

1    Q.   (BY MS. SCOTT)   Okay.   What I've just
2    handed you is a notice which also includes an
3    application filed on behalf of Ms. Meiyu You; is that
4    correct?
5          A.   Yes.
6          Q.   And that is dated February 28th, 2017?
7          A.   Yes.
8          Q.   Filed in Alameda County, in the Superior
9    Court of California; is that correct?
10         A.   Yes.
11         Q.   Proceeding, Ms. You against Ms. Yang, case
12    number HG15785974; is that correct?
13         A.   Yes.
14         Q.   Flip over with me to page -- there aren't
15    any page numbers.  One, two, three, fourth page.  Are
16    you there?
17         A.   Yes.
18         Q.   Start reading for me at line 9, where it
19    starts "Eventually."
20         A.   "Eventually, a settlement was reached
21    between You and Luca International Group, LLC.  You
22    agreed that the $120,000 from the sale proceeds of the
23    real property would be paid to the account of Luca
24    International Group, LLC or the bankruptcy litigation
25    trustee's subrogation rights to the second trust deed



JOHN CHU                                      July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                      27

1   holder."

2              Shall I continue?

3        Q.   Yes, please.

4        A.   "To the extent that Luca International
5   Group, LLC had any further claims from its subrogation
6   rights" --

7        Q.   For any claims -- any claims for -- start
8   at "To the extent," please.

9        A.   "To the extent that Luca International
10  Group, LLC had any further claims from its subrogation
11  rights to the second trust deed holder, then those
12  claims would be subordinate to You's claims."

13           Then there is a citation to the declaration

14  of Yang, paragraph 9.

15       Q.   Yes, that's fine.  So in that portion you

16  just read, You refers to Ms. Meiyu You, correct?

17       A.   Yes.

18           MR. JONES:  Objection, form.

19       Q.   (BY MS. SCOTT)  Being the party who agreed

20  to pay the $120,000; is that correct?

21       A.   Yes.

22       Q.   And the --

23           MR. JONES:  Objection to form.

24       Q.   (BY MS. SCOTT)  And the second trust deed

25  holder is Polycomp; is that correct?



JOHN CHU                                              July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              28

```
 1          A.    Correct.

 2          Q.    Okay.  Go two pages over from that page, on

 3    line 6.  Are you there?

 4          A.    Yes.

 5          Q.    Okay.  It shows that there is a first deed

 6    of trust -- well, let's see.  "As of the date of this

 7    motion, the balances owed on the real property are as

 8    follows."  Let's see, "First deed of trust $237,719.06

 9    (through January 31st, 2017)."  Then "Second trust

10    deed" 400 -- I'm sorry, "$42,855.28 (through January

11    31st of 2017)."  The "Homestead exemption $100,000."

12    And then it shows "Luca International LLC settlement

13    $120,000.  Total senior lienholders" 574,000 -- I'm

14    sorry, "$500,574.34;" is that correct?

15          A.    Yes.

16          Q.    And the real property being referred to is

17    the Driscoll Road property that we've been discussing

18    here today; is that correct?

19          A.    Correct.

20          Q.    Also this portion reflects shares on

21    advanced fees to be determined, correct?

22          A.    Yes.

23          Q.    "You's judgment $425,000; You's interest on

24    judgment $71,261.28, (June 1st, 2015 through February

25    2nd, 2017);" is that correct?
```



JOHN CHU                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                            31

```
 1          Q.   Isn't it true that she states that her
 2    opinion as owner of the property that the fair market
 3    value of the property is at least $1.668 million?
 4          A.   1.668 million, yes.
 5          Q.   And Ms. Yang in fact signed this
 6    declaration on April 7th, 2017; is that correct?
 7          A.   That's correct.
 8          Q.   So as you stated, this summary of
 9    opposition was filed in response to a motion that
10    Ms. You filed seeking approval of a writ of execution
11    sale bid, correct?
12          A.   Yes.
13          Q.   And the proposed bid that Ms. You wanted to
14    pay was partially a cash bid and partially a credit
15    bid; is that correct?
16          A.   Correct.
17          Q.   The partial cash was $742,000?
18          A.   Yes.
19          Q.   And the credit bid was $425,000, correct?
20          A.   Yes, correct.
21          Q.   And that would have brought her total
22    proposed bid to the $1,167,000?
23          A.   Correct.
24          Q.   So the credit bid was based upon her
25    abstract of judgment, correct?
```



JOHN CHU                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                         32

```
1            A.   Correct.
2                 MS. SCOTT:  Let's see.  The next exhibit
3     I'm going to hand you is -- let's see, what number are
4     we on now?
5                 THE WITNESS:  That was 13, so the next one
6     is 14.
7                 MS. SCOTT:  14.
8                 (Deposition Exhibit 14 was
9                 marked for identification.)
10           Q.   (BY MS. SCOTT)  Now there was a hearing on
11    this particular motion on April 13th, correct?  Well,
12    let me make it easier for you.
13           A.   I'm not sure if the hearing actually took
14    place on the 13th or whether it was continued for a
15    week after.
16           Q.   Okay.  All right.  I'm handing you Exhibit
17    14, which is an order granting the sale of a dwelling,
18    at least that is what it's titled.  Well, motion for
19    order for sale of dwelling granted; is that correct?
20           A.   Yes.
21           Q.   And it's dated April 13th, 2017, correct?
22           A.   Yes, correct.
23           Q.   And it is an order signed by the court,
24    correct?
25           A.   Yes.
```



1            Q.   Case number HG15785974, Ms. You versus

2       Ms. Yang, correct?

3            A.   Correct.

4            Q.   Again in the Superior Court of California,

5       County of Alameda.

6            A.   Yes.

7            Q.   Okay.  So this order is pretty plain and

8       simple.  Basically states what we've discussed here

9       today.  Will you start at "The motion," read that

10      portion for me.

11           A.   The part where it says "It is hereby

12      ordered" or --

13           Q.   No, start at "The motion."

14           A.   Start at "The" -- oh, okay.

15           Q.   At the top.

16           A.   "The motion for order for sale of dwelling

17      filed for Meiyu You was set for hearing on April 13th,

18      2017 at 9:00 a.m. in Department 511 before the

19      Honorable Kimberly E. Colwell," C-O-L-W-E-L-L.  "The

20      tentative ruling was published and was contested.

21                "The matter was argued and submitted, and

22      good cause appearing, therefore.

23                "It is hereby ordered that:

24                "Judgment creditor Meiyu You aka Meiyu

25      Shelley You's motion to approve the writ of execution



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
34

1    sale bid is granted.

2              "It is hereby ordered:

3              Subparagraph (1), "That the Alameda County

4    Sheriff shall accept You's bid of $1,167,000 for the

5    real property located at 2822 Driscoll Road in Fremont,

6    California, 94539.

7              Subparagraph (2), "The Alameda County

8    Sheriff shall process and complete the sale upon

9    receipt of this order and You's payment of $742,000.

10             "The court has considered judgment debtor

11   Bingqing Yang's late-filed opposition brief in ruling

12   on the motion."

13        Q.   Okay.  Thank you.  So in Ms. You's motion

14   to approve the writ of execution bid, she acknowledged

15   that there was $120,000 owed to the Luca bankruptcy

16   estate?

17        A.   Yes, she did.

18        Q.   Now based upon that order isn't it true

19   that there was in fact a sale set for the Sheriff to

20   proceed with foreclosure on the Driscoll property?

21        A.   The sale was -- had already taken place in

22   January.  But the Sheriff had not yet completed the

23   sale, so the sale was pending.

24        Q.   Okay.  So the pending portion was simply

25   awaiting to see if the court would approve the --



1   Ms. You's bid, correct?

2         A.   Correct.

3         Q.   So in response to that Ms. Yang took out

4   loans to try to stop this proceeding as far as the

5   Sheriff proceeding with the foreclosure?

6         A.   Yes.  Under California law the sale is not

7   actually complete until the Sheriff issues his deed to

8   the successful bidder at the sale.  So while this sale

9   was pending, Ms. Yang scrambled to try and find the

10  funds to pay off Ms. You's judgment.  So payment of the

11  judgment would in fact stop the sale at that point.

12        Q.   And when you say "judgment," you are

13  referring to the abstract of judgment --

14        A.   Yes.

15        Q.   -- which is based on the stipulated

16  judgment, correct?

17        A.   Correct.

18             (Deposition Exhibit 15 was

19             marked for identification.)

20        Q.   (BY MS. SCOTT)  All right.  So now I hand

21  to you Exhibit 15.  Okay.  What I've handed you is

22  entitled "Secured Loan Agreement;" is that correct?

23        A.   Yes.

24             MR. YUN:  Whose name is on this one?  I

25  just want the right one.



```
 1                    MS. SCOTT:  I'm sorry?

 2                    MR. YUN:  This is the Wang -- this is Wang,

 3     No. 15?

 4                    MS. SCOTT:  Yes.

 5                    MR. YUN:  Thank you.  Okay.

 6              Q.   (BY MS. SCOTT)  This is --

 7                    MR. JONES:  Could you give me the name of

 8     that document?

 9                    MR. YUN:  This is the Wang loan.

10                    THE WITNESS:  It's entitled "Secured Loan

11     Agreement" and the lender on this particular agreement

12     is Xinyu Wang, X-I-N-Y-U.

13                    MS. SCOTT:  Yeah, I'm getting there.  I'm

14     going to ask all those questions.

15                    THE WITNESS:  Okay.

16              Q.   (BY MS. SCOTT)  All right.  Who is the

17     borrower on this secured loan agreement?

18              A.   Ms. Yang.

19              Q.   Who is the lender?

20              A.   Mr. Xinyu Wang, W-A-N-G.

21              Q.   What is the amount of the loan?

22              A.   $500,000 in US dollars.

23              Q.   And what is the interest rate?

24              A.   Five percent per annum.

25              Q.   And what is the collateral of the loan?
```



```
 1              A.    Well, the collat --
 2                    MR. JONES:  Objection.
 3                    THE WITNESS:  -- collateral of the loan is
 4    supposed to be the Driscoll Road property.  But
 5    Ms. Yang was aware that --
 6                    MS. SCOTT:  Let me stop you there.
 7    Objection, nonresponsive.
 8              Q.    (BY MS. SCOTT)  So the collateral of the
 9    loan is to -- or the proposed or intended collateral
10    for the loan is the 2822 Driscoll Road, Fremont,
11    California, 94539 property, correct?
12              A.    Correct.
13                    MR. JONES:  Objection, form.
14              Q.    (BY MS. SCOTT)  Let's see, now there is a
15    portion under here that says, "Part A agree to have the
16    following real property as the collateral and make the
17    deed of trust record within 120 days start from the day
18    of the reception of the loan," correct?
19              A.    Yes.
20              Q.    And the date on this loan is April 18th,
21    2017, correct?
22              A.    Correct.
23              Q.    And it's signed by Ms. Yang, correct?
24              A.    Yes.
25              Q.    Also appears to be signed by --
```



JOHN CHU                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              38

```
 1                    MR. JONES:  Objection, form.
 2             Q.   (BY MS. SCOTT)  Also signed by Ms. -- I'm
 3    sorry, by the lender, correct?
 4             A.   Correct.
 5                    MR. JONES:  Objection, form.
 6             Q.   (BY MS. SCOTT)  Loan document also states
 7    on page 2, "Part B understands that the local court
 8    need approve this collateral," correct?
 9             A.   Yes.
10             Q.   And Ms. Yang's intent is that the Driscoll
11    property secures this loan, correct?
12             A.   Yes.
13                    MR. JONES:  Objection, form.
14             Q.   (BY MS. SCOTT)  And it is the lender's
15    understanding that the Driscoll property is intended to
16    secure this loan, correct?
17             A.   Correct.
18                    MR. JONES:  Objection, form.
19             Q.   (BY MS. SCOTT)  Do you have any
20    communications with this lender?
21             A.   No, I have not.
22             Q.   Do you have any contact information for
23    this lender?
24             A.   No, I do not.
25             Q.   Would you be able to obtain any contact
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
39

```
 1   information for this lender?

 2          A.   Yes, I could.

 3          Q.   And would you provide that information to

 4   me, please?

 5          A.   Yes.

 6               MS. SCOTT:  I believe we're on Exhibit 16.

 7               (Deposition Exhibit 16 was

 8               marked for identification.)

 9          Q.   (BY MS. SCOTT)  What I've handed you is a

10   document entitled "Secured Loan Agreement," correct?

11          A.   Yes.

12          Q.   Who is the borrower on that document?

13          A.   Ms. Yang.

14          Q.   Who is the lender?

15          A.   A Mr. Kai Nie, K-A-I, N as in Nancy I-E.

16          Q.   What is the amount of the loan?

17          A.   $50,000 US.

18          Q.   What is the interest rate of the loan?

19          A.   Six percent per annum.

20          Q.   What is the collateral for the loan, or the

21   intended collateral for the loan?

22               MR. JONES:  Objection to form.

23               THE WITNESS:  Intended collateral is 2822

24   Driscoll Road.

25          Q.   (BY MS. SCOTT)  And is Driscoll, 2822
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
40

1    Driscoll Road, Fremont, California, property reflected

2    on this document as collateral?

3          A.   Yes.

4             MR. JONES:   Objection, form.

5          Q.   (BY MS. SCOTT)   Does this document also

6    include language that "Part A agree to have the

7    following real property as the collateral and make the

8    deed of trust record within 120 days start from the

9    first date of the reception of this loan;" is that

10   correct?

11         A.   That's correct.

12         Q.   And the property reflected there also is

13   2822 Driscoll Road, Fremont, California, correct?

14         A.   Correct.

15         Q.   On the last page of the document it is

16   executed by Ms. Yang, correct?

17         A.   Correct.

18             MR. JONES:   Objection, form.

19         Q.   (BY MS. SCOTT)   Dated April 23rd, 2017?

20         A.   Correct.

21         Q.   And also executed by the lender on April

22   23rd, 2017, correct?

23         A.   Correct.

24             MR. JONES:   Objection, form.

25         Q.   (BY MS. SCOTT)   Do you have any



JOHN CHU                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              42

```
 1            THE WITNESS:  Yes, as to Exhibit 16 -- as
 2   to Exhibit 15, yes, as to Exhibit 15.
 3            Q.   (BY MS. SCOTT)  So Ms. You (sic) obtained
 4   this loan to pay off Ms. You, correct, the $500,000
 5   loan?
 6            MR. JONES:  Objection.
 7            THE WITNESS:  Yes.
 8            MS. SCOTT:  Let me go back and restate
 9   that.
10            Q.   (BY MR. SCOTT)  Ms. Yang obtained this
11   $500,000 loan to pay off Ms. You's lien on the
12   property, the Driscoll property?
13            A.   Correct.
14            MR. JONES:  Objection, form.
15            (Deposition Exhibit 17 was
16            marked for identification.)
17            Q.   (BY MS. SCOTT)  Okay.  What I'm handing you
18   now as Exhibit No. 17, which is an email chain between
19   you and -- when I say "you," I mean you, Mr. Chu, and
20   Mr. Jason Yang, Meiyu You's counsel, correct?
21            A.   Yes.
22            Q.   There was an email that you sent -- Mr. Chu
23   sent to Jason Yang on Sunday, April 16th, 2017, at
24   10:15 p.m., correct?
25            A.   Correct.
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
45

1          A.    This email?

2          Q.    Yes.

3          A.    Yes, Exhibit 17.

4                MS. SCOTT:   Thank you.   Next exhibit is

5    Exhibit 18.

6                (Deposition Exhibit 18 was

7                marked for identification.)

8          Q.    (BY MS. SCOTT)   Okay.   What I've just

9    handed you is an official check; is that correct?

10         A.    It's an official Citibank cashier check,

11   yes, a copy of it.

12         Q.    Yes, what is the amount?

13         A.    504,000 -- pardon me.   Let me start over.

14   $504,035.94.

15         Q.    To whom is it made payable?

16         A.    To the Alameda County Sheriff's Office.

17         Q.    Who is the remitter?

18                MR. JONES:  Objection, form.

19                THE WITNESS:   The remitter is Bing Yang --

20   or it's Corporate Counsel Law Group, LLP.

21         Q.    (BY MR. SCOTT)   Mr. Chu, who submitted the

22   check to Alameda County Sheriff's Office?

23         A.    I did.

24         Q.    On who's behalf?

25         A.    On behalf of Bing Yang.



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
46

1          Q.    For what purpose?

2                MR. JONES:  Object to the form of the

3    question.

4                THE WITNESS:  To pay off Ms. You's judgment

5    and to remove the judgment lien.

6                Q.   (BY MS. SCOTT)  And that's your law firm,

7    right?

8                A.   That's my law firm.

9                Q.   It also has some writing on here about the

10   "levy # 15-30010 -- 30010, You versus Yang BC510775;"

11   is that correct?

12               A.   That's correct.  I wrote that in there.

13               Q.   All right.  So this is a check that your

14   firm -- that you submitted on -- this is a check that

15   you, Mr. Chu, submitted to the Alameda County Sheriff's

16   Office, correct?

17               A.   I personally handed that check to the

18   deputy in charge of the execution sale, yes.

19               Q.   And the purpose of doing so?

20               A.   To pay off the Meiyu judgment and to remove

21   the judgment lien from the property.  Although I'm not

22   sure Ms. You has removed the lien to date.

23               Q.   Have you requested a release?

24               A.   I have not.

25               Q.   Have you received a release?



JOHN CHU                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                           47

1           A.   I have not.  My understanding was that
2    Ms. You would still be seeking attorney's fees for the
3    enforcement of the settlement agreement and judgment,
4    and that she would not be removing the lien until that
5    issue was resolved.
6           Q.   Attorney's fees in the proceeding here in
7    California?
8           A.   Yes.
9           Q.   Has she filed any additional documentation
10   regarding that?
11          A.   No, she has not.
12          Q.   So your firm received the funds from the
13   $500,000 loan?
14          A.   Yes, we did.
15          Q.   How?
16          A.   It was wired into one of our operating
17   accounts.  It was supposed to have been wired to our
18   trust account, but they used the wrong account and it
19   ended up in an operating account instead.  But we -- we
20   purchased this cashier's check from the operating
21   account, so we're square.
22          Q.   Okay.  Let me make sure I'm clear.  The
23   funds from the $500,000 loan came to your firm's
24   account?
25          A.   Correct.



JOHN CHU                                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                        48

```
 1         Q.   And the firm sent a check, this particular
 2    check, Exhibit 18, to the Sheriff's Office?
 3         A.   That's correct.
 4         Q.   Okay.  Let's move over to another exhibit.
 5    I believe that will be exhibit No. 19.
 6                   (Deposition Exhibit 19 was
 7                   marked for identification.)
 8         Q.   (BY MS. SCOTT)  So what I've just handed
 9    you is a check from the County of Alameda; is that
10    correct?
11         A.   Yes.
12         Q.   What is the date on that check?
13         A.   May 11th, 2017.
14         Q.   What is the amount of the check?
15         A.   $501,445.87.
16         Q.   And to whom is the check made payable?
17         A.   The Law Office of -- Law Offices of Bin Li,
18    PLC.
19         Q.   And that is Ms. Meiyu You's counsel,
20    correct?
21         A.   That's correct.
22         Q.   At the top there is a reference to a case
23    number and case name.  Would you read that for me,
24    please.
25         A.   "Meiyu You aka Meiyu Shelley You, Bingqing
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
51

1  19 through the break have been struck and we're

2  starting over at 19.

3          Q.   (BY MS. SCOTT)  All right.  Mr. Chu, you

4  have Exhibit 19 in front of you.  That is a check

5  issued by the County of Alameda, correct?

6          A.   Correct.

7          Q.   What's the date on the check?

8          A.   May 11th, 2017.

9          Q.   What is the amount?

10         A.   $501,445.87.

11         Q.   And who is the check payable to?

12         A.   Payable to the Order of Law Offices of Bin

13  Li, PLC.

14         Q.   And that's Ms. Meiyu You's counsel,

15  correct?

16         A.   Yes.

17         Q.   At the top of that check there is a

18  reference, Mei You aka Meiyu Shelley You versus

19  Bingqing Yang, et al., is that correct?

20         A.   Yes.

21         Q.   Okay.  I think we're ready to go over to

22  Exhibit 20.

23              One other question on Exhibit 19.  And

24  these were funds transmitted from the Sheriff's Office

25  to Ms. You's counsel, correct?



JOHN CHU                                              July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                    52

```
 1           A.    Correct.
 2                 MR. JONES:  Objection, form.
 3           Q.    (BY MS. SCOTT)  Okay.  So the next document
 4  is Exhibit 20.  Okay.  I've already given you that.
 5           A.    I have it.
 6           Q.    This is an email from you to me, correct?
 7           A.    From me to you.
 8           Q.    From Mr. Chu to me, Brendetta Scott,
 9  correct?
10           A.    Correct.
11           Q.    It is dated June 30th, 2017, and sent at
12  11:29 a.m. on a Friday, correct?
13           A.    Correct.
14           Q.    Look at the second paragraph for me,
15  please.  And would you -- let's see, the second
16  sentence, will you read that for me, please.
17           A.    "Bing was able to borrow money from an old
18  school classmate at the very last second on an
19  emergency basis to pay off the judgment thereby
20  stopping the Sheriff sale."
21           Q.    And that is your statement to me in the
22  email, correct?
23           A.    Correct.
24           Q.    Second, well, next paragraph, second
25  sentence, please.
```



1          A.    "There was also a $500,000 wire transfer

2    into one of our operating accounts of April 17, 2017,

3    by Xinxu," X-I-N-X-U, "Wang on behalf of Bing, but I

4    can't find a copy of the actual transmittal."

5          Q.    And that's another statement in your email

6    to me, correct?

7          A.    Yes.

8          Q.    And in the email you attach several

9    documents that you were sending to me, correct?

10         A.    Yes.

11         Q.    I think I'm going to come back to that.

12   I'll come back to that.

13               All right.   The next exhibit I am going to

14   hand to you is Exhibit 21.

15               (Deposition Exhibit 21 was

16               marked for identification.)

17         Q.    (BY MS. SCOTT)  That is Polycomp's note,

18   correct?

19         A.    Yes, correct.

20         Q.    And it is dated March 12th, 2015; is that

21   correct?

22         A.    Yes.

23         Q.    What is the amount of that loan?

24         A.    $650,000.

25         Q.    Interest rate?



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
54

1           A.    10.5 percent.

2           Q.    And the maturity date is April 1st, 2020;

3    is that correct?

4           A.    Correct.

5           Q.    Looks like the monthly payment of

6    $5,945.81; is that correct?

7           A.    Yes, correct.

8           Q.    Flip over to the back page.  Who actually

9    signed this note as borrower?

10          A.    Sheng Liu and Bingqing Yang.

11          Q.    Who was the lender?

12          A.    The lender was Polycomp.  Yes, the lender

13   is Polycomp Trust Company.

14          Q.    And this note was also secured by a deed of

15   trust; is that correct?

16          A.    Correct.  Actually by two deeds of trust.

17               MS. SCOTT:  Objection to the portion after

18   I asked you about two deeds of trust.

19               Okay.  I believe we are now on Exhibit 22.

20               (Deposition Exhibit 22 was

21               marked for identification.)

22          Q.    (BY MS. SCOTT)  All right.  What I've

23   handed you is Polycomp's deed of trust; is that

24   correct?

25          A.    Yes.



```
 1          Q.    What is the date on it?
 2          A.    March 12th, 2015.
 3          Q.    And Polycomp is reflected as the lender or
 4    the trustee, correct?  No, I'm sorry, reflected as the
 5    lender, correct?
 6          A.    Correct.
 7          Q.    And the collateral or property, properties
 8    used to secure that loan, is 3704 Monte Sereno Terrace,
 9    Fremont, California, 94539, correct?
10          A.    Correct.
11          Q.    And 2822 Driscoll Road Fremont, California,
12    94539, correct?
13          A.    Correct.
14          Q.    So both properties were used to secure this
15    particular loan held by Polycomp, correct?
16          A.    Correct.
17          Q.    In the amount of $650,000, correct?
18          A.    Correct.
19          Q.    And would you go to page 8 of the deed of
20    trust, please.  Who executed this deed of trust as
21    borrower?
22          A.    Sheng Liu and Bingqing Yang.
23          Q.    And this deed of trust was in fact recorded
24    in the official records of Alameda County on March
25    20th, 2015; is that correct?
```



JOHN CHU                                                                July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                                      56

1           A.   Correct.

2                (Deposition Exhibit 23 was

3                marked for identification.)

4           Q.   (BY MS. SCOTT)   Okay.   I am going to hand

5    you Exhibit 23.   So isn't it true that Polycomp's loan

6    was paid off at a discounted amount?

7           A.   Yes.

8           Q.   Looking at Exhibit No. 23, looking at the

9    second page of it for me, please.

10          A.   The second page?

11          Q.   Yes.

12          A.   Yes, uh-huh.

13          Q.   You sent Mr. Brian Boren -- well, first of

14   all, who is Mr. Brian Boren?

15          A.   Mr. Brian Boren is the loan officer in

16   charge of the Polycomp loan account to Bing Yang.

17          Q.   Okay.   And you have -- this email reflects

18   correspondence or communication between you and

19   Mr. Boren, correct?

20          A.   Correct.

21          Q.   And there appears to be an understanding

22   that a full satisfaction of the Polycomp debt will be

23   paid off at $38,000, correct?

24          A.   Correct.

25          Q.   Go to the first page.   There is an email



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017

57

1    from Mr. Boren to you on May 12th, 2017, at 5:17 p.m.,

2    correct?

3           A.   Yes.

4           Q.   Would you read that portion for me?

5           A.   "Fair enough John.  We will accept the

6    offer.  Please be ready to wire Monday.  I will send

7    you an updated demand and we will close this out.

8    Thank you, Brian."

9           Q.   And what was your response to him on

10   Monday, May 15th, 2017, 11:29 a.m.?  Him being

11   Mr. Boren.  Oh, I apologize.  There was a an email from

12   Mr. Boren to you.

13          A.   Yes.  Brian followed up that email and he

14   sent me the updated demand.  It says, "John, Here is

15   the updated demand good through tomorrow with the

16   discount agreed upon.  Please let me know once you have

17   transmitted the funds.  Thank you."

18          Q.   Okay.  And the very last page, which is an

19   attachment to this email; is that correct?

20          A.   Yes.

21          Q.   And what is that?

22          A.   That is the Polycomp Trust Company FBO Ira

23   J. Boren letterhead containing the beneficiary payoff

24   demand on the Polycomp loan.

25          Q.   What is the amount?



1          A.   The payoff amount grand total due is

2    $38,000.

3          Q.   What's the date on that payoff?

4          A.   May 15, 2017.

5          Q.   And who -- and it also is agreed to and

6    signed off by Polycomp, correct?

7          A.   Correct.

8          Q.   And the offer that was accepted or agreed

9    upon to pay off the Polycomp loan was $38,000, correct?

10         A.   Correct.

11              MS. SCOTT:   Okay.  And the next exhibit

12   that I am going to hand you is Exhibit No. 24.

13              (Deposition Exhibit 24 was

14              marked for identification.)

15         Q.   (BY MS. SCOTT)  Okay.  So this is an email

16   chain between Mr. Chu and Mr. Boren, correct?

17         A.   Correct.

18              MR. JONES:   Could you give me the date of

19   that email so that I can locate it?

20              MS. SCOTT:   Yes.  This is dated May 15th,

21   2017.  Starts with, "Sorry, I forgot the attachment,

22   which is now attached."  It's one of the documents or

23   emails that Mr. Chu sent to us yesterday.

24              MR. JONES:   Okay.  Thank you.

25              MS. SCOTT:   Sure.



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
59

1          Q.   (BY MS. SCOTT)   Mr. Chu, let me just for

2   clarification on the record, Exhibit No. 23 and Exhibit

3   No. 24 are documents that you produced to both me and

4   Mr. Jones pursuant to the subpoena that was issued by

5   Mr. Randy Williams, correct?

6          A.   Correct.

7          Q.   Okay.  So let's start at May 15th, an email

8   from Mr. John Chu to Mr. Boren.  Let's see, Monday, May

9   15th, 2017, 2:05 p.m., correct?

10         A.   2:07 p.m.

11         Q.   Yes; is that correct?

12         A.   Yes.

13         Q.   All right.  And you are attaching -- this

14  is an email from you to Mr. Brian Boren.  You have

15  attached the wire confirmation information, correct?

16         A.   Correct.

17         Q.   Let's take a look at that.  It is attached

18  as well.

19         A.   Well, what happened was that I was

20  following up on Brian's previous email asking for a

21  copy letting him know once I transmitted the funds.

22              So I emailed him at 2:07 p.m. saying

23  "Attached is the wire confirmation."  But then I

24  immediately discovered I forgot to attach.  And so I

25  followed up with another email saying, "Sorry, I forgot



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
60

1      the attachment, which is now attached."

2              Q.   Yes, yes, yes.

3              A.   That's what happened.

4              Q.   We've all done that.  Okay.  So let's look

5      at the attachment.

6              A.   Yes.

7              Q.   The wire instruction confirmation,

8      confirmation number being 20171350400127, correct?

9              A.   Yes.

10             Q.   $38,000, correct?

11             A.   Correct.

12             Q.   To beneficiary Investment Management

13     Company LLC in Santa Monica, California, correct?

14             A.   Yes.

15             Q.   This is for settlement of Bing Yang and

16     Sheng Liu, correct?

17             A.   Correct.

18             Q.   This was a payment to Polycomp, correct?

19             A.   Correct.

20             Q.   And this was to have their lien released on

21     the Driscoll property, correct?

22             A.   Correct.

23                  MS. SCOTT:  Okay.  Exhibit No. 25.

24                  (Deposition Exhibit 25 was

25                  marked for identification.)



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
61

1          Q.   (BY MS. SCOTT)  Just for clarification,

2     Exhibit 25 is a document that was produced pursuant to

3     the subpoena issued by the liquidating trustee,

4     correct?

5          A.   Correct.

6          Q.   Okay.  All right.  This is an email chain

7     between Mr. Chu and Mr. Boren dated May 15th, 2015,

8     2:08 p.m. on a Monday; is that correct?

9          A.   Correct.

10         Q.   And there is an email from Mr. Boren to

11    you, and he -- Mr. Boren is requesting signed copies of

12    the discounted payoff from the borrowers, correct?

13         A.   Correct.

14         Q.   And did you in fact send those signed

15    copies to Mr. Boren?

16         A.   Yes, I did, on Saturday, May 20th.  I did.

17         Q.   At 5:08 p.m. pursuant to this email,

18    correct?

19         A.   Yes.

20         Q.   Attached in fact are the signature -- the

21    executed beneficiary demand showing the payoff of

22    $38,000, correct?

23         A.   Yes.

24         Q.   Signed by Ms. Yang and Mr. Liu, correct?

25         A.   Yes.



1              MR. JONES:  Objection, form.

2              MS. SCOTT:  All right.  We're now at

3    Exhibit 26.

4              (Deposition Exhibit 26 was

5              marked for identification.)

6         Q.   (BY MS. SCOTT)  All right.  What I've just

7    handed you is an email from Mr. Allan Sarver to Mr. Chu

8    dated Monday, May 22nd, 2017, at 10:31 a.m., correct?

9         A.   Yes.

10        Q.   And Mr. Allan Sarver represents Polycomp,

11   correct?

12        A.   Correct.

13        Q.   This Exhibit 26 is another email that you

14   produced to the liquidating trustee's counsel pursuant

15   to the subpoena that was issued by the liquidating

16   trustee's counsel, correct?

17        A.   Yes.

18        Q.   Attached to that email is a letter dated

19   May 19th, correct?

20        A.   Correct.

21             MS. SCOTT:  Can we go off the record real

22   quick?

23             (Off the record from 10:51 to 10:52.)

24             MS. SCOTT:  Back on the record.

25        Q.   (BY MS. SCOTT)  Okay.  Attached to the



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
63

1   email is a letter from Mr. Allan Sarver dated May 19th,

2   2017, correct?

3          A.   Correct.

4          Q.   And it is to Mr. Judd, Mr. Rothberg and to

5   yours truly, Brendetta Scott, correct?

6          A.   Correct.

7          Q.   Regarding the Luca International Group LLC,

8   et al. order granting Polycomp's claim of interest in

9   proceeds, notice pursuant to court order, request for

10  response, correct?

11         A.   Correct.

12         Q.   And on the second page of that letter,

13  second paragraph, Mr. Sarver, who is counsel for

14  Polycomp, is giving notice to constitute -- strike

15  that.  Mr. Sarver is giving -- is stating that "This

16  letter shall constitute notice to you as debtors'

17  counsel in compliance with the aforementioned order,

18  that my client's note secured by deed of trust has now

19  been paid in full."

20              Did I read that correctly?

21         A.   Yes.

22              MR. JONES:   Objection, form.

23         Q.   (BY MS. SCOTT)   And he's also asking for

24  reconveyance of the deed of trust upon payment in full.

25  Or I'm sorry --



MR. JONES: Objection, form. I'm sorry.

Q. (BY MS. SCOTT) Let me restate that. Third paragraph states, "Under California law, my client is required to reconvey the deed of trust upon payment in full. Absent objection, my client intends to reconvey said deed of trust."

Did I read that correctly?

A. Yes.

MR. JONES: Objection, form.

Q. (BY MS. SCOTT) So Mr. Sarver is advising that Polycomp has been paid in full, correct?

A. Correct.

MR. JONES: Objection, form.

Q. (BY MS. SCOTT) And Ms. You -- I'm sorry, Ms. Yang in fact made that payment to Polycomp, correct?

A. Correct.

MR. JONES: Objection, form.

Q. (BY MS. SCOTT) And Polycomp's lien was secured by the Driscoll property, correct?

A. Correct.

Q. Also attached to Mr. Sarver's letter is an order granting Polycomp's claim of interest in the proceeds, correct?

A. Yes.



JOHN CHU                                           July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                            65

```
 1            Q.   This is an order issued in the bankruptcy
 2    proceeding regarding Luca International Group LLC.
 3    This is document number 545, correct?
 4            A.   Yes.
 5            Q.   Look at paragraph No. 5 please on the
 6    second page of that order signed by Judge Jones.
 7            A.   I see it.
 8            Q.   This order is signed February 2nd, 2016,
 9    correct?
10            A.   Yes.
11            Q.   And would you read that fifth paragraph,
12    No. 5, please.
13            A.   "Upon payment in full of the amounts due
14    under the Polycomp note and the Polycomp deed of trust,
15    Luca Operation, LLC, and its successor-in-interest, as
16    representative of all and each of the debtors or their
17    successors-in-interest, shall be equitably subrogated
18    to Polycomp's rights under the Polycomp note and the
19    Polycomp deed of trust in all respects."
20            Q.   So the nature of Mr. Sarver's letter was to
21    notify Polycomp had been paid off, correct?
22            A.   Yes.
23            MR. JONES:  Objection to form.
24            Q.   (BY MS. SCOTT)  How was Polycomp paid off?
25            MR. JONES:  Objection, form.
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
66

1          THE WITNESS:   The payment of Polycomp's

2   remaining amount owed was through the $38,000 wire

3   transfer that I effected on behalf of Ms. Yang.

4          Q.   (BY MS. SCOTT)   And this payoff was around

5   May 15th, 2017, correct?

6          A.   Yes.

7          MS. SCOTT:   I think we're at Exhibit 27.

8          (Deposition Exhibit 27 was

9          marked for identification.)

10          Q.   (BY MS. SCOTT)   I'm handing you Exhibit 27.

11   Okay.   What I've just handed you is Exhibit 27, which

12   is an email, an email chain that is -- that includes

13   yours truly Brendetta Scott, Mr. John Yun, Ed Rothberg,

14   Randy Williams, Elizabeth Guffy, Loretta Cross, Alice

15   Jensen, Sheila O'Callaghan dated June 5th, 2017.

16   Actually that's where it ends; is that correct?

17          A.   Yes.

18          Q.   Let's go over to the second page of the

19   email.   Actually I want to go farther back than that.

20   Let's go to the fourth page of the email.   Okay.   There

21   is an email from Mr. Chu that was sent on Tuesday, May

22   30th, 2017 at 2:27 p.m.   You in fact sent that email to

23   Allan Sarver, correct, Mr. Chu?

24          A.   Yes.

25          Q.   Would you read that second paragraph.



JOHN CHU                                          July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              67

```
 1          A.    "On May 15, 2017, pursuant to my client's
 2   discounted pay off agreement with Polycomp Trust
 3   Company FBO Ira J. Boren, my client fully paid
 4   Polycomp's deed of trust against her residence at 2822
 5   Driscoll Drive, Fremont, California."
 6          Q.    And that payoff was the $38,000, correct?
 7          A.    Correct.
 8          Q.    And you were also requesting a reconveyance
 9   of the deed of trust, correct, from Polycomp?
10          A.    Correct.
11          Q.    Has there been a reconveyance?
12          A.    No, there has not.
13          Q.    During the negotiation or the discussions
14   of paying off the Polycomp loan was there ever any
15   notification of the liquidating trustee of the Luca
16   estate?
17                MR. JONES:  Objection, form.
18                THE WITNESS:  You mean did we -- did I --
19                MS. SCOTT:  Let me reask the question.
20                THE WITNESS:  Okay.
21          Q.    (BY MS. SCOTT)  Do you know if the
22   bankruptcy estate was notified of the payoff to
23   Polycomp?
24          A.    Not until after it happened.
25          Q.    Okay.  And this email that you sent was to
```



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
68

1    Mr. Sarver and to me, Brendetta Scott, correct?

2         A.   Correct.

3         Q.   All right.  So let's move forward in the

4    email.  Let's go to Monday, June 5th, which would be on

5    the second page.  Are you there?

6         A.   Yes, uh-huh.

7         Q.   Okay.  So this is an email sent by Mr. John

8    Chu on Monday, June 5th, 2017, at 12:11 a.m.  You in

9    fact sent this email to Mr. John Yun, correct?

10        A.   Correct.

11        Q.   First, the paragraph numbered No. 1, would

12   you read the second sentence.

13        A.   "The funds used to pay off the remaining

14   balance owed to Polycomp were borrowed."

15        Q.   The second paragraph, paragraph labeled No.

16   2, would you read that, please?

17        A.   The entire second paragraph?

18        Q.   Yes, please.

19        A.   "No post-asset freeze liens have been

20   placed on the Driscoll property.  To the extent that

21   Ms. Yang's lenders seek liens on the Driscoll property

22   to secure their loans, we will seek district court

23   approval for the liens."  Then there is a typo.  "I

24   have asked Ms. Yang to forward the loan documentation

25   for the motion to be filed."



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
69

1          Q.    Has this motion been filed yet?

2          A.    No, it has not.

3          Q.    When will it be filed?

4          A.    Within the next month, I hope.  It's one of

5     these -- it's on the back burner.  I've been --

6          Q.    But it will be filed?

7          A.    It will be filed.

8          Q.    And it is Ms. Yang's intent that the

9     Driscoll property secure those loans, correct?

10         A.    Yes.

11              MR. JONES:  Objection, form.

12         Q.    (BY MS. SCOTT)  All right.  Let's see, next

13    paragraph, which is the third paragraph, you state,

14    "Ms. Yang's replacement loan was necessary for the

15    preservation of the property."

16              And the last sentence of that says, "The

17    replacement loan will have lower interest charges and

18    eliminate the danger of imminent foreclosure."

19              Did I read that correctly?

20         A.    That's correct.

21         Q.    There was also a 24 percent default

22    interest rate on the Polycomp deed of trust; is that

23    correct, or note?

24         A.    That's correct.  Polycomp was accruing

25    interest at 24 percent per year.  And the bankruptcy



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
70

1    court in Texas had approved of that rate being accrued

2    to them.  So we weren't in a position to challenge

3    that.

4              Q.   So this loan that you are referring to is

5    the $500,000 loan?

6              A.   No.  Oh --

7              Q.   The replacement loan?

8              A.   The replacement loan for the Polycomp debt

9    was the $50,000 loan.

10             Q.   Okay.  Thank you.

11             MR. JONES:  Object to form.

12             Q.   (BY MS. SCOTT)  And the $500,000 loan was

13   for Ms. Meiyu You; correct?

14             A.   That was for Ms. You, correct.

15             MR. JONES:  Object to form.

16             Q.   (BY MS. SCOTT)  When I say that loan was

17   for her, it was used to pay off her -- Ms. Meiyu You's

18   lien, correct?

19             A.   Correct.

20             MR. JONES:  Object to form.

21             Q.   (BY MS. SCOTT)  So it appears that Polycomp

22   was also paid off around the same time as the Sheriff

23   sale; is that correct?

24             A.   About a month after.

25             MR. JONES:  Objection to form.



JOHN CHU                                                July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                         71

```
 1                    THE WITNESS:  As I recall, yes, correct.
 2           Q.   (BY MS. SCOTT)  Have there been any repairs
 3      done on the Driscoll property recently?
 4           A.   Repairs, no, there have not.
 5           Q.   Are there any intended to be made?
 6           A.   No.
 7                    MR. JONES:  Objection, form.
 8                    THE WITNESS:  The property is in good
 9      condition.  There is no need for repairs or anything.
10                    MS. SCOTT:  This is Exhibit 28.
11                    (Deposition Exhibit 28 was
12                    marked for identification.)
13           Q.   (BY MS. SCOTT)  Okay.  What I've just
14      handed you is an email from Mr. Sarver, Polycomp's
15      counsel, to Mr. Chu, and Mr. Brian Boren is copied.
16      The date of the email is Thursday, June 29th, 2017, at
17      10:27 a.m., correct?
18           A.   Correct.
19           Q.   And this is essentially an agreement that
20      the reconveyance that Polycomp -- I'm sorry, that --
21      let me strike that and start all over.
22                    This is an agreement that Mr. Chu -- your
23      request for the reconveyance of the deed of trust to
24      Ms. Yang will be stayed; is that correct?
25           A.   That's correct.
```



JOHN CHU                                            July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              72

1          Q.   Okay.  I want to go back to Exhibit 20.

2               MR. JONES:  Say one more time.  I'm sorry.

3               MS. SCOTT:  Exhibit 20.  We're going back

4      to Exhibit 20.

5               MR. JONES:  Okay.

6          Q.   (BY MS. SCOTT)  Well, first, I think I've

7      asked this, I just want to make sure that I did.  Has

8      there been a release from Ms. You?

9          A.   No, there has not.

10         Q.   Has there been a release from Polycomp?

11         A.   No, there has not.

12         Q.   But both those loans have been paid,

13     correct?

14         A.   Correct.

15              MR. JONES:  Objection, form.

16         Q.   (BY MS. SCOTT)  Okay.  On your -- on

17     Exhibit 20, this is the email that Mr. John Chu sent to

18     yours truly, Brendetta Scott, including some documents

19     that were requested.  And included in those documents

20     appears to be a wire for $29,980 on April 28th, 2017;

21     is that correct?

22              Let's take a look at the email from Howard

23     Chung to Mr. Chu on Tuesday, May 2nd, 2017 at 3:11 p.m.

24         A.   Yes.

25         Q.   So this starts with you asking if there was



JOHN CHU                                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                      73

1    a $30,000 wire from China; is that correct?

2            A.    Correct.

3            Q.    And you got a response that there was a

4    $29,980 wire from -- is it -- I'm going to let you

5    pronounce it.

6            A.    Lai Chunhui, L-A-I, C-H-U-N-H-U-I.

7            Q.    And who is that?

8            A.    I believe that's a friend or associate of

9    Bing Yang.  I don't know the person.

10           Q.    What was the purpose of these funds?

11           A.    The purpose of the $30,000 wire from China

12   was to fund the Polycomp payoff.

13           Q.    Was this part of the $50,000 secured loan

14   agreement?

15           A.    Yes.

16                 MR. JONES:  Objection, form.

17           Q.    (BY MS. SCOTT)  Next there is a transaction

18   receipt/funds availability notice.

19           A.    Yes.

20           Q.    For $8,000 on May 9th, 2017, from looks

21   like Citibank.  Is this a wire transaction?

22           A.    No.  This was actually a direct deposit

23   into the -- into the Citibank trust account.

24           Q.    What was the purpose of this $8,000?

25           A.    That was for the payoff of the Polycomp



JOHN CHU                                           July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                            74

```
 1    loan.
 2          Q.   Was this also part of this $50,000 secured
 3    loan agreement?
 4          A.   Yes, it was.  It was part of the $50,000.
 5                MR. JONES:  Objection to form.
 6                MS. SCOTT:  Thank you.  Okay.  So at this
 7    point I will pass the witness for any other questions.
 8                MR. JONES:  I'm happy to commence.  If
 9    anybody needs a break we can take a break first, but
10    I'm happy to keep going, whatever you guys prefer.
11                MR. YUN:  I'm fine.
12                MS. SCOTT:  Yeah, I'm fine, we can go on.
13                   EXAMINATION BY MR. JONES
14          Q.   Okay.  My name is Brandon Jones.  I
15    represent Meiyu You, also known as Shelley.
16                Mr. Chu, with regards to -- if you'll get
17    Exhibit No. 15 in front of you, which is titled
18    "Secured Loan Agreement" in the amount of $500,000.
19          A.   I have it.
20          Q.   Okay.  Did you draft this secured loan
21    agreement?
22          A.   No, I did not.
23          Q.   Did you negotiate on behalf of Ms. Yang
24    with regards to this secured loan agreement?
25          A.   No, I did not.
```



JOHN CHU                                                  July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                      78

```
 1              Q.   (BY MR. JONES)  Mr. Chu, is this -- is the
 2     intent behind this loan your intent, Mr. Chu, or
 3     Ms. Yang's intent?
 4              A.   Both of us, I believe.  And the -- there is
 5     ambiguity as to intent.  My intent for Bing borrowing
 6     money was to pay off the judgment and judgment lien.
 7     What Bing's intent was in borrowing it, that's --
 8     that's, you know, I can't speak for her, but I presume
 9     that was her intent as well.  But that was my intent.
10              Q.   Okay.  But you did not negotiate with the
11     person listed as lender on this Exhibit 15, correct?
12              A.   No, I did not.  I did not -- I've never met
13     or spoken to this person.
14              Q.   Do you know who drafted this secured loan
15     agreement, Exhibit 15?
16              A.   Not specifically.  Generally I do know, but
17     specifically I do not know.
18              Q.   What's your general understanding?
19              A.   My general understanding is that it was
20     drafted by an attorney in China.
21              Q.   And did you have communications with
22     counsel in China with regards to this secured loan
23     agreement?
24              A.   No, I did not.
25              Q.   Does -- if you'll look at Exhibit 23 -- I'm
```



JOHN CHU                                                July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                      79

1  sorry, Exhibit 20.  For the record I do not have this

2  exhibit, I haven't received a copy of it.  But I'll go

3  based on your prior testimony.  But if you'll get

4  Exhibit No. 20 in front of you.

5            A.   Yes.

6            Q.   I believe you stated that this is an email

7  wherein you are explaining a wire in the amount of

8  $500,000.  Is that generally correct?

9            A.   No.  This is my response to Ms. Scott's

10  email asking -- asking me for certain documents, and

11  asking me for permission to speak with Ms. Yang.  So

12  this is my response to Ms. Scott where she asked me for

13  certain documents and I responded.

14            Q.   If you'll look at Exhibit 18, which is the

15  Citibank check.

16            A.   Yes, I have it.

17            Q.   Was this -- were the funds from this check

18  drawn out of your firm's trust?

19            A.   No, they were not.  They were drawn out of

20  one of our operating accounts.

21            Q.   And how did the funds -- how were the funds

22  placed into your operating account to draw this money?

23            A.   $500,000 of the check was wire transferred

24  into our operating account a few days before April

25  21st, 2017.



JOHN CHU                                     July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                          80

1        Q.   And do you note who wired the money in your
2   operating account?
3        A.   I'm not sure who the exact remitter is, but
4   it was Ms. Yang who caused the amounts to be wired.
5        Q.   And how do you know that it was Ms. Yang
6   that caused the amounts to be wired?
7        A.   Uh --
8        Q.   Is there, is everyone still on?
9        A.   Yeah, I'm, I'm --
10       Q.   Okay, I'm sorry.  I apologize.  I don't
11   have the benefit of --
12       A.   No, I'm sorry.  I need to formulate my
13   answer so that I can do it without disclosing
14   attorney-client communications.
15       Q.   Take your time.  I apologize.  I did not
16   mean to interrupt.
17       A.   And to answer your question, I know that
18   this $500,000 was remitted to your account by Ms. Yang,
19   because there were ongoing communications between
20   Ms. Yang and myself immediately preceding the wire
21   relating to the status of that particular wire.  So
22   we -- I was expecting that money from her all during
23   that time.
24       Q.   Okay.
25       A.   So to answer your question, I was expecting



1   theories the lender could assert in that regard.  And

2   the reason I hesitate to speak on it is because I can

3   envision the lender coming into court and seeking

4   equitable subrogation rights based on the facts.  But

5   there is no consensual lien available to that lender

6   for foreclosure.

7           Q.   (BY MR. JONES)  Okay.  Let's change gears

8   briefly and let's talk about the payoff of the judgment

9   that Meiyu or Shelley had against Bingqing Yang.

10  Ms. You called the Sheriff sale on the Driscoll

11  property, correct?

12          A.   She was the one who initiated it, yes.

13          Q.   And Shelley bid, but her bid was too low,

14  correct?

15          A.   Yes.

16          Q.   And she requested that the court there in

17  Alameda County accept her lower bid, correct?

18          A.   Correct.

19          Q.   And the court ended up approving Shelley's

20  request, correct?

21          A.   Correct.

22          Q.   And there was an order that's an exhibit in

23  this deposition that reflects the approval of Shelley's

24  request for the entry and order allowing her lower bid,

25  correct?



 1        A.    Correct.

 2        Q.    After the entry of that order you

 3   approached Jason Yang to negotiate a payoff or a

 4   settlement of Shelley's judgment, correct?

 5        A.    Well, I approached Mr. Yang, but I don't

 6   recall trying to negotiate with him.  I just asked him

 7   for his payoff demand.

 8        Q.    And Mr. Yang provided a response to you,

 9   correct?

10        A.    Correct.

11        Q.    And that response had a number that was

12   larger than 504,000 -- strike that.

13             And Mr. Yang's response was an amount in

14   excess of $504,035.94, correct?

15        A.    Correct.

16        Q.    So is it fair to say that you, on behalf of

17   Ms. Yang, did not accept or take Mr. Jason Yang's --

18        A.    Payoff demand.

19        Q.    -- amount of payoff?

20        A.    Yes.

21             MS. SCOTT:  Objection to form.

22             THE WITNESS:  We did not -- we did not pay

23   his payoff demand, correct.

24        Q.    (BY MR. JONES)  And instead you caused --

25   you issued a check to the Alameda County Sheriff's



JOHN CHU
LUCA INTERNATIONAL GROUP, LLC

July 12, 2017
91

1   Office, correct?

2           A.   Ultimately, yes.

3           Q.   And the basis for the amount of that check,

4   and this is Exhibit No. 18, Deposition Exhibit No. 18,

5   the basis for the amount of that check is for the

6   principal and interest under Shelley You's, Meiyu You's

7   judgment, correct?

8           A.   It's actually more than that.  It's more

9   than principal and interest.  It also includes --

10          Q.   What was it --

11          A.   Well, let me explain.  Under California law

12  the judgment creditor obtains a writ of execution.  And

13  the writ of execution has the amount on it as far as

14  the payment of the judgment.  It includes principal, it

15  includes interest.  It also includes a third component,

16  costs, which also includes attorney's fees.

17              So the only way to obtain the payoff demand

18  is to get that number from the judgment creditor, or

19  alternatively you can get that number from the Sheriff.

20              So when I got what I thought was a

21  ridiculously high and improper payoff demand from

22  Mr. Yang, I went directly to the Sheriff to get the

23  Sheriff's number.  And 504,000 figure is the number

24  that I got from the Sheriff.

25          Q.   And the payment of this amount -- and the



JOHN CHU                                                July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                      92

 1   figure you got from the Sheriff is for the payoff of

 2   the judgment against Ms. Yang, correct?

 3           A.   Correct.

 4           Q.   And this check was issued to pay off the

 5   judgment against Ms. Yang, correct?

 6           A.   Correct.

 7           Q.   Now Meiyu You still asserts a lien against

 8   the Driscoll Road property for attorney's fees, do you

 9   understand that?

10           A.   Yes, yes.

11           Q.   To be fair, Ms. Yang would oppose that

12   lien, correct?

13           A.   Correct.

14           Q.   So the Driscoll Road property has not been

15   sold, correct?

16           A.   It has not been sold.

17           Q.   Ms. Yang still owns it today?

18           A.   She does.

19           Q.   Now once this payment was made in Exhibit

20   18 to the Alameda County Sheriff's Office, is it

21   correct that under California law the Sheriff could not

22   go forward with the sale of the Driscoll Road property?

23           A.   That's correct.

24           Q.   And that's pursuant to California statute,

25   I believe California Code of Procedure 699.020; is that



JOHN CHU                                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                        97

1  Yun representing the Securities and Exchange

2  Commission.

3                    EXAMINATION BY MR. YUN

4          Q.   As Ms. Yang's counsel, are you generally

5  familiar with the liens currently against the Driscoll

6  Road property?

7          A.   Yes, I am.

8          Q.   Okay.  So you've testified just a few

9  minutes ago that CitiMortgage has a first lien against

10  the property.  Do you know the approximate outstanding

11  balance of that?

12          A.   I think it's approximately 230,000,

13  240,000, in that ballpark.

14          Q.   Okay.  And is it current?

15          A.   Yes, it's current.

16          Q.   Is there a second recorded lien against the

17  property?

18          A.   The Polycomp lien was second.

19          Q.   Okay.  To your understanding how much is

20  still owed under that second lien?

21          A.   Nothing.

22          Q.   Nothing.  Okay.  And then the third lien,

23  is that Ms. Shelley You's lien?

24          A.   That is Ms. You's judgment, yes, her

25  judgment lien.



JOHN CHU                                              July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              98

1           Q.    To your understanding, I know this may be a

2   matter of dispute, but to your understanding how much

3   is still owed on that lien?

4           A.    I -- the only conceivable remaining amount

5   owed under that lien would be Ms. You's attorney's fees

6   in enforcement of her settlement agreement.  But I

7   don't know what they are.  Mr. Yang had given me a

8   figure of $350,000, which seems to me excessive as far

9   as enforcement of a judgment.  But right now I can only

10  speculate as to what they are claiming.  So I have no

11  idea.

12          Q.    Okay.  So would it be fair to say that your

13  understanding is that to the extent Ms. You is still

14  owed any money on the third lien it would be some

15  disputed amount for attorney's fees?

16          A.    If at all.

17          Q.    If at all?

18          A.    She may not be entitled to attorney's fees

19  at all because I had not seen the stipulated judgment

20  for a long time.  But in just reviewing it today, I

21  just happened to look for an attorneys fee provision in

22  the stipulated judgment and I didn't see one.

23          Q.    Okay.  Fine.

24          A.    So it may well be that she's not entitled

25  to any fees.



JOHN CHU                                                    July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                                      101

```
 1            A.   It's -- this was -- this is money that he
 2    lent previously.  And that money has either been used
 3    by Ms. Yang to live on or to reinvest into the Luca
 4    businesses.
 5            Q.   Okay.  Are any -- is any of that money
 6    transfers that were made between Ms. Yang and Skyastar?
 7            A.   Possibly.
 8            Q.   Any other liens that you are aware of?
 9            A.   No, that would be it.
10            Q.   So with respect to the $500,000 loan amount
11    from Mr. Wang in April of this year, you say that money
12    came into your firm's operating account by accident.
13    It should have gone to the attorney trust account?
14            A.   Correct.
15            Q.   Putting that aside, from what institution
16    did your firm's bank receive the money?
17            A.   I believe it was Bank of China.
18            Q.   Bank of China.  Do you know if they were a
19    correspondent, or were they actual account holders that
20    transferred the money in?
21            A.   I don't know.
22            Q.   Do you know the name of the account holder
23    at Bank of China that transferred the money in?
24            A.   I do not know.
25            Q.   How about the -- but there is a record
```



JOHN CHU                                                   July 12, 2017
LUCA INTERNATIONAL GROUP, LLC                              102

```
 1   somewhere?
 2          A.   There is a record somewhere.
 3          Q.   And how about the $50,000 that Mr. Nie lent
 4   to Ms. Yang in April of this year.  How did your firm
 5   receive that money?
 6          A.   My firm received it through the $30,000
 7   wire transfer.
 8          Q.   Right.
 9          A.   And the $8,000 direct deposit into our
10   trust account.  And there was an additional $7,000
11   deposit that was, I believe, direct deposited into
12   our -- into either one of our operating accounts or to
13   the trust account.  I can't remember off the top of my
14   head.
15          Q.   And what institution made the $30,000 wire
16   transfer to your firm?
17          A.   I believe it was Bank of China.
18          Q.   Bank of China?
19          A.   It was an overseas bank.  That much I know.
20          Q.   That was in one of the exhibits?
21          A.   I think so.
22          Q.   And the $8,000 direct deposit, what
23   institution made that?
24          A.   That was -- that was $8,000 that one of
25   Ms. Yang's associates here directly deposited into our
```



1   account.  So I don't have a copy of a check or

2   anything.  Just that deposit slip.

3        Q.   Do you know the name of the person that

4   made the deposit?

5        A.   I do not, no.

6        Q.   Do you know if the bank knows, is there a

7   record?

8        A.   I don't know, possibly.

9        Q.   Okay.  Which account was it at your firm,

10  was it the operating account or the client trust

11  account?

12       A.   I believe it was the trust account.

13       Q.   Okay.  Do you have access to that deposit

14  record?

15       A.   I do not.  Just that slip.

16       Q.   Just that slip?

17       A.   Yeah.

18       Q.   That's the only thing you have?

19       A.   Yeah.  I don't even have the actual slip.

20  That was a copy of the slip that was transmitted to me.

21       Q.   How about for the 7,000 direct deposit.  Do

22  you know what institution made that?

23       A.   I do not know.

24       Q.   Okay.  Was it the same circumstance, the

25  deposit was simply made?



1       A.   Yes.

2       Q.   With respect to the secured loan

3  agreements, are you aware of any other signed secured

4  loan agreements other than the two you have produced to

5  us?

6       A.   No, I'm not.

7       Q.   Are you aware of any other unsigned secured

8  loan agreements?

9       A.   No.

10       Q.   Do you know whether or not Ms. Yang has

11  entered into any other secured loan agreements since

12  the SEC filed its lawsuit against her?

13       A.   Not that I know of.

14       Q.   How about any other loan agreements that

15  she has entered into ever since the SEC signed -- filed

16  this action against her?

17       A.   None that I'm aware.

18       Q.   What is the name of the sister that is also

19  residing at the Driscoll Road property?

20       A.   I don't know.  It's a Chinese name.  It was

21  mentioned to me once, but I didn't really take note of

22  it.

23       Q.   Okay.  And then you say her mother is

24  there?

25       A.   Her mother is there, yes.



1          Q.   Okay.  Anybody else that you know of

2     resides there?

3          A.   Yes.  There is a non-family member there,

4     but I'm not sure who it is.

5          Q.   Okay.  Do you know --

6          A.   Oh, her sister's children are there, too.

7     And then there is a non-family member.  And I'm not

8     sure who that person is.

9          Q.   Okay.  Do you know who, if anyone, is

10    making the mortgage payments to CitiMortgage?

11         A.   I don't know.  My belief is that it was

12    Ms. Yang's sister who is living there.  But I don't

13    know for sure.  I know they are being made, though.

14         Q.   Okay.  And that same person would also be

15    making the insurance, mortgage, other necessary

16    payments to maintain that property?

17         A.   Insurance, yes.  They may be behind in

18    taxes.

19              MR. YUN:  All right.  Okay.  Those are my

20    questions.  Thank you.

21              MS. SCOTT:  I have a few more.  I know

22    we're right at 12.  But I should be done in about five

23    minutes, if that long.

24              FURTHER EXAMINATION BY MS. SCOTT

25         Q.   You mentioned that -- well, when Mr. Jones



1    was questioning you, you mentioned that the source of

2    the wire funds of the $500,000 from the secured loan

3    agreement was wired into your account, correct?

4           A.    Correct.

5           Q.    Your firm's account?

6           A.    Yes.

7           Q.    And would you obtain copies of that for me?

8    I believe you had mentioned that you would do so in a

9    prior email, of the wire transaction?

10          A.    I've never seen one.  That's just the

11   thing.  Normally when there is a wire transfer into

12   your account the bank sends you a written notification

13   that there has been a wire.  But I've actually never

14   seen it.  I can look for it again, but I'm not sure why

15   we don't have one.

16          Q.    Right.  And aside for the funds received

17   from the $50,000 secured loan agreement as well?

18          A.    Yes.

19          Q.    Thank you.

20          A.    Now I think that the 38,000 --

21          Q.    It was a 30,000 -- well, must have been

22   some kind of wire transfer fee, which reduced it by

23   maybe --

24          A.    $20.

25          Q.    And then there was an $8,000 deposit.  So



```
 1   that's 38,000.

 2            A.    Yes.

 3            Q.    So of that 50,000 loan there was only

 4   38,000 of it that you received?

 5            A.    And additional 7,000, too, I believe.

 6            Q.    Okay.  I didn't get that information.

 7   Would you provide that information to me as well, if

 8   you are able to find it?

 9            A.    I'll look for it, yeah.

10            Q.    Okay.  Thank you.  Do you consider a loan

11   to be an asset?

12            MR. JONES:  Objection, form.

13            THE WITNESS:  Do I consider a loan to be an

14   asset?  I consider a loan to be an asset if you are the

15   lender, but it's a liability if you are the borrower,

16   yeah.

17            Q.    (BY MS. SCOTT)  Okay.  The check that was

18   sent to the County of Alameda Sheriff's Office included

19   an amount that was obtained from the Sheriff's Office,

20   correct?

21            A.    The cashier's check amount was the amount

22   that the Sheriff told me was necessary to pay the

23   judgment.  That amount came from the Sheriff, yes.

24            Q.    Do you know if it included fees and costs

25   to the county, the Sheriff's Office?
```



1          A.   Yes, it did.

2               MS. SCOTT:  Okay.  I don't have anything

3     else.  Oh, let me ask you this.

4          Q.   (BY MS. SCOTT)  Do you know if there are

5     any agreements between Ms. You and Ms. Yang regarding

6     this proceeding, other than the ones we've discussed

7     here today?

8          A.   I do not know.  But I'm reasonably sure

9     that there are not, because they have not been on

10    speaking terms for a long time.  All communications

11    have been through counsel.

12              MS. SCOTT:  Okay.  I don't have any other

13    questions at this time.

14              MR. YUN:  I have one follow-up question.

15    Did you want to go forward, Brandon?

16              MR. JONES:  No, I'm good.  Go ahead.

17              FURTHER EXAMINATION BY MR. YUN

18         Q.   Very quickly.  In terms of the lien that

19    Mr. Jun Yang has against the Driscoll Road house, did

20    you help in any way in the negotiation or drafting of

21    that documentation?

22         A.   I prepared the deed of trust for Ms. Yang.

23    But what happened with that deed of trust after I

24    prepared it I'm not sure.  I don't know.  I wasn't

25    involved in having Jun Yang sign it.  In fact I'm not

```
1                    CERTIFICATE OF REPORTER

2

3           I, DIANE M. WINTER, a Certified Shorthand

4    Reporter, hereby certify that the witness in the

5    foregoing deposition was by me duly sworn to tell the

6    truth, the whole truth, and nothing but the truth in

7    the within-entitled cause;

8               That said deposition was taken in shorthand

9    by me, a disinterested person, at the time and place

10   therein stated, and that the testimony of the said

11   witness was thereafter reduced to typewriting, by

12   computer, under my direction and supervision.

13           I further certify that I am not of counsel

14   or attorney for either or any of the parties to the

15   said deposition, nor in any way interested in the event

16   of this cause, and that I am not related to any of the

17   parties thereto.

18              DATED:  July 12, 2017

19

20

21      _____

22           DIANE M. WINTER, CSR No. 3186

23           CERTIFIED SHORTHAND REPORTER

24

25
```

